**UNITED STATES to Use of ROIG v. CASTRO et al.**

**Civ. No. 4321.**

District Court, Puerto Rico,
April 11, 1947.

Ràfael C. Fernandez, of San Juan, P. R., for Ramon M. Roig.

Adolfo Valdes, of San Juan, P. R., for Celestino Castro.

J. R. Beverley and Carmen B. Hernandez, both of San Juan, P. R., for Glens Falls Indemn. Co.

COOPER, District Judge.

By this proceeding Ramon M. Roig, use-plaintiff, seeks to recover from the defendants Celestino Castro as Principal and Glens Falls Indemnity Company as Surety, the amounts set forth in plaintiff's complaint. The defendant Castro admits in his answer that Roig was to receive a salary which is stated in the complaint but alleges that salary was paid to Roig as and when it

became due. He denies liability for other claims made by Roig. He alleges substantially that the work in question was performed jointly by Castro and Roig under an agreement to the effect that Roig was to contribute his work and his engineering equipment as a partner or joint venturer with a 25% interest in the contract, while Castro contributed his work and engineering equipment and further financed the whole undertaking as a partner with a 75% interest.

Defendant Castro also states a counterclaim alleging substantially that the demand made by Roig for hired equipment and repairs thereto is in excess of the rates permitted by the Office of Price Administration and on that account he claims from Roig treble damages in the total sum of $10,349.64.

The defendant Glens Falls Indemnity Company in its answer admits paragraphs 1, 2 and 3 of the complaint with reference to the capacity of the parties, the public works contract between Castro and the United States Government, and the payment bond furnished in connection therewith by Glens Falls Indemnity Company. All allegations of the complaint other than the three paragraphs are denied. The Glens Falls Indemnity Company also alleges as a special defense that the rental of construction equipment, cost of repair parts and repairs to such equipment are not included in the phrase "labor and material" for which the surety answers under the provisions of law and the terms of the bond given by it.

After a careful consideration of the pleadings and the evidence, and briefs submitted by counsel for all parties, I make the following findings of fact and conclusions of law.

### Findings of Fact.

I. Defendant Celestino Castro on or about November 29, 1943, entered into a contract with the United States of America, Engineer Office, known as Contract No. W-1099-Eng.-1524, for the construction of a "Pipe Line 'A' of Waterwork Facilities for San Juan, Puerto Rico" in the sum of $188,025.

II. As required by Section 270a of Title 40 U.S.C.A. in conection with said public works contract, defendant Celestino Castro as principal, and codefendant Glens Falls Indemnity Company as surety, executed a payment bond on or about December 13, 1943 acknowledging themselves to be held jointly and severally bound in the sum of $94,012.50, the condition thereof being as follows: "Now Therefore, if the principal shall promptly make payment to all persons supplying labor and materials in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue."

III. Defendant Celestino Castro employed plaintiff Ramon M. Roig as engineer to supervise work to be done in the field under said contract.

IV. Castro agreed that Roig should have a salary of $200 per week to be paid upon termination of the work, irrespective of whether or not a profit on the contract was realized.

V. Castro agreed that Roig would receive 25% of any net profits, salary to be deducted therefrom; that is to say, if the 25% of profits realized was more than the total amount of the salary, Roig would receive the difference but if the 25% was less than the total amount of the salary, then Roig would receive only the salary. Roig was not responsible for any loss which might result.

VI. Work under said public works contract started December 17, 1943 and terminated August 31, 1944.

VII. The total amount of Roig's salary, Victory Tax deducted is $7,201 which amount has not been paid to him by Castro.

VIII. Castro hired from Roig the following equipment which was used in the work during the time stated in respect to each item:

Angledozer Allis Chalmers HD7, Model 1941, for 6½ months

Air compressor Ingersoll Rand 1941, 160 cu. ft., for 4 months, 21 days.

Concrete Mixer Jaegger 75, 1941, for 8 months
3 Jack Hammers for two (2) months
Tools, tire and steel wheel barrows, etc. from December 17, 1943 to August 31, 1944.

IX. Castro agreed to pay for the repairs and replacements of Roig's equipment.

X. I find that the fair rental for the Angledozer is $665 per month which for 5.3 months, totals the sum of $3524, which amount is now due Roig.

XI. Castro owes Roig as follows:

| | |
|---|---:|
| 4 months, 21 days, use of air compressor Ingersol—Rand 1941, 160 cu. ft. at $180.00 | $ 846.00 |
| 8 months use concrete mixer Jaegger 75, 1941, at $77.00 | 616.00 |
| 2 months use of jack hammers at $60.00 | 120.00 |
| 5 months use 300 1-ft. 3/4" air hose at $20.00 | 100.00 |
| Rental of tools, tire and steel wheel barrows, etc. from December 17, 1943 to August 31, 1944 | 325.00 |
| | $2007.00 |
| Also money paid by Roig to P.R. Iron Works, Sobrinos de Portilla, Ulpiano Casals and others, for repairs to equipment and parts therefor | 819.10 |
| | $2826.10 |

### Conclusions of Law.

1. The Court has jurisdiction of this case under Section 270b, Title 40 U.S.C.A.

2. The relation between defendant Celestino Castro and plaintiff Ramon M. Roig was not that of partners, but that of employer and employee.

3. Castro having admitted that Roig was to receive a salary and having pleaded payment thereof, the burden is on Castro to prove such payment by a preponderance of the evidence. This he has failed to do.

4. Defendant Glens Falls Indemnity Company answers under its bond for payment of Roig's salary.

5. The defendant Glens Falls Indemnity Company is not required to pay for repairs to Roig's equipment and repair parts therefor amount to $819.11. This was for repairs made after the completion of the project. However, Glens Falls Indemnity Company must answer under its bond for the rental of Roig's equipment and for necessary repairs in the prosecution of the work.

6. Plaintiff Roig is entitled to interest at 6% per annum from the date of the filing of the complaint on the total amount found due him.

7. Defendant Castro has failed to sustain his counterclaim.

### Opinion.

Having reached the conclusion heretofore stated, I deem it appropriate to state briefly some of the more compelling reasons on which my findings and conclusions are based. As to the question of Roig's salary, although it would seem somewhat strange that a salary appearing on a weekly payroll should be left to accumulate until the termination of the work, the legal situation is that the defendant Castro, having admitted both in his answer and on the witness stand, that Roig was to receive his salary, it is incumbent on Castro to prove the payment of the salary agreed upon. In this respect, after careful consideration of Castro's evidence, I find it insufficient to establish the fact of payment. On the other hand, I am convinced by the entire evidence, that he (Castro) did not pay any part of Roig's salary. The plea of payment must be established by a preponderance of evidence. This measure of proof is not sustained by Castro.

Both Roig and Castro submitted statements from their bank accounts. It appears from the bank records that during the period of this contract, Castro deposited in his bank, in twenty and ten dollar bills, about $4,500. During the same period Roig made only one or two cash deposits and they of insignificant amounts. It also appears that Roig's cash balance in the bank had declined materially during the contract period. While this is not conclusive it is significant.

Regarding Roig's claim for rental of his equipment, the defense pleaded by Castro is that Roig had contributed his equipment on a partnership basis so that he had no right to receive a rental therefor. This is contradicted by statements of Castro himself and by circumstances. One would hardly expect a person in Roig's position to consent to any such contract as Castro alleges. He would have us believe that Roig agreed to furnish his equipment which was undoubtedly much more than any equipment furnished by Castro, that Roig was to supervise the principal part of the work and then receive only 25% of the profits as compensation for his own work and his equipment. And this in the face of defendants statement in his answer and also by his counsel during the trial, that Roig was to receive his salary regardless of profit or loss on the general project. One witness who was an employee of Castro and worked in his office during the execution of this contract, testified that on several occasions he went to the bank to get money for the payroll, that he was either present or had taken part in distributing the envelopes containing the money due to various employees. That the money of Mr. Roig was turned over to Castro. This is supported by other circumstances. I know of no reason to discredit the testimony of this witness and if his testimony is to be accepted, there can be no doubt that Roig's contention as to his salary is sustained by a clear preponderance of testimony. It would seem that Castro's testimony as to the payment of Roig's salary, is discredited by the fact that he had testified falsely as to rental for equipment. It is reasonable to assume that he was also in error as to the payment of salary.

There is really nothing in the record to sustain the suggestion that Roig was a partner in this project. As to Roig's equipment, a document is in evidence which clearly indicates that Castro was endeavoring to satisfy Roig as to a proper basis for calculating the amount due as rental for his equipment. No other construction could be placed upon such transaction. Roig said that his rental was to be the same as that charged by the United States Government Engineers for similar equipment. The engineers furnished some equipment on this particular project but their equipment was furnished on an hourly basis. It clearly appears, however, that the army engineers not only furnish equipment on an hourly basis but also on a weekly or monthly basis. It may be that Roig was misinformed as to the amount of rental for his Angledozer. But he certainly indicated a willingness to correct any error in this respect. The fact remains, however, that Castro did not pay to Roig any amount for such rental and, therefore, under no view of the case could he sustain his counterclaim for treble damages. It is significant that Castro kept no record of the hours in which Roig's equipment was used. He did have such record in reference to the equipment of the Government. Why no record for the equipment of Roig? The answer is simple and is sustained by the record. Roig's equipment was on a monthly basis and the only thing necessary to determine the amount due was to find out the monthly rental charged by the Army engineers and multiply that by the number of months in which his equipment was used. In order to remove any doubt as to the merits of this case, I have reduced the monthly rental for the Angledozer to $665 and the time covered to 5.3 months. The defendant Glens Falls Indemnity Company has set up in its answer a special defense that its bond does not require it to pay for equipment furnished to this project. Its contention is that the words "labor and material" excludes any liability for rental of construction equipment, cost of labor, parts of construction equipment and repairs to construction equipment and therefore it has no liability to the plaintiff for the claims set forth in paragraphs 5 and 6 of the complaint.

I have already stated that Glens Falls Indemnity Company is not liable for repairs made to machinery after the completion of the project. However, the cases seem to sustain the proposition that a surety on such a bond is responsible for equipment used in the execution of a contract and that such equipment is included in the term "labor and materials."

A judgment will be entered against the defendants jointly and severally for all the

amounts found owing Roig, with the exception of the claim for repairs to equipment amounting to $819.11. This amount will be included as against Castro but not as against Glens Falls Indemnity Company. Roig is entitled to interest at the rate of 6% per annum from the date of the filing of the complaint in this procedure.