## NATIONAL TUBE CO. v. KENNEDY.

Circuit Court of Appeals, Third Circuit. July 20, 1927.

No. 3576.

1. Contracts ⬤⟹29—Principal and agent ⬤⟹ 124(2), 174—Evidence held to warrant submitting to jury questions whether contract was made by defendant's agent and was authorized or ratified by defendant.

Evidence held sufficient to warrant submission to the jury of the questions (1) whether the contract sued on, by which defendant's purchasing agent agreed to pay plaintiff a commission for bringing defendant in touch with a concern from which it could buy steel ingots, and from which it afterward did buy, was in fact made; and (2) whether the contract was authorized or ratified by defendant.

2. Evidence ⬤⟹75—That party refrained from bringing out testimony of witnesses who had knowledge of facts may be considered in determining whether issues should be submitted to jury.

Where defendant had opportunity to obtain testimony from two witnesses, who had knowledge on vital issues in the case, but refrained from asking the questions, the fact may be considered in determining whether the issues should be submitted to the jury.

In Error to the District Court of the United States for the Western District of Pennsylvania; Robert M. Gibson, Judge.

Action at law by Joseph W. Kennedy against the National Tube Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George E. Shaw and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for plaintiff in error.

Arthur O. Fording, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This writ of error is directed to the third judgment entered in this controversy. The first suit was brought in 1917; judgment of compulsory nonsuit was entered in 1918 and affirmed by this court in 1919. Shortly thereafter, the plaintiff instituted the second suit. At the trial a judgment of compulsory nonsuit was entered and pending a motion to take it off the trial judge died. Thereafter the plaintiff discontinued the action and brought the third suit which resulted in a verdict and judgment in his favor for $25,492.50. The defendant brings that judgment here by this writ of error and seeks its review on the one assignment that the trial court erred in denying its motion for a directed verdict. That motion raised in the trial court, and raises here, two questions: (1) Whether there was testimony that would sustain a finding by the jury that the parties entered into the express contract declared on in the pleading; and (2) whether there was testimony that would sustain a finding that the defendant had authorized its agent to make the contract in its behalf. The first question was ruled adversely to the plaintiff on the record of the first trial under the first writ of er-

ror. In view of that ruling this court did not pass on the second question.

For purposes of this review we avail ourselves of the statement of the main facts and contentions appearing in our former opinion, reported in 255 Fed. 1. The defendant now makes the same contentions on what it regards as precisely the same testimony. The plaintiff admits that the testimony in this case is in part the same as that given in the first case but urges that at the last trial (resulting in a verdict in his favor) there was additional testimony which supplemented that given at the first trial and made good the deficiencies which this court found there. [1] Both the first and last cases were tried on substantially the same statement of claim declaring on an express contract entered into in April, 1917, between the plaintiff and Lynch, purchasing agent for the defendant, whereby the plaintiff engaged to bring the defendant in touch with a concern from which it might purchase steel ingots at about $61.50 a ton, and the defendant promised to pay the plaintiff for that service a commission of $1.00 for each ton it should purchase. Seller and buyer were thus brought together and the defendant purchased 19,500 tons of ingots at $62.50 a ton. On the first writ of error, as on this one, it was clear from the record before us that steel ingots were scarce and the defendant was greatly in need of them; that Kennedy's information as to where they could be purchased was of value; and that, for giving that information, both Kennedy, the plaintiff, and Lynch, the defendant's purchasing agent, thoroughly understood that Kennedy expected to be paid the commission by someone. We thought Kennedy's testimony in that case did not show that Lynch, speaking for the defendant, had promised to pay the commission and, accordingly, found no evidence of the contract sued upon. In this (the third) case we find Kennedy's testimony different from that of the first in that it was more extended and more direct and we think it was such as to justify submission to the jury and enough to sustain its finding that Lynch made the promise. Therefore we hold the trial court did not err in submitting that question if, next, there was evidence on which the jury might find that Lynch, the purchasing agent, had been authorized by the defendant, his principal, to make such a promise on its behalf. That question arose in the trial court, and it now arises in this court, in a manner which calls for decision for the first time.

Admittedly, there was no evidence of ex-

press authority. The learned trial judge, therefore, was required to charge the law of apparent authority given by a principal to his agent in dealing with third persons. He did this correctly and fell into no error if there was enough evidence of authority of that kind to require submission of the question. The plaintiff's evidence on this issue was meager, being only of that authority which may be inferred from powers incidental to or implied from the main power to purchase and which may be inferred from the nature of the transaction and the principal's subsequent conduct. We think there was enough to carry the question to the jury, unaffected, as it was, by testimony introduced for the defendant. From the conversations which Kennedy had with Lynch, the jury—according as they believed Kennedy rather than Lynch—might readily have inferred that Lynch had the defendant's authority to do what he did. Of course this would not be conclusive upon the defendant unless the evidence would indicate that the defendant either gave him authority, actual or apparent, or ratified his action.

[2] In this connection we must look upon the examination and testimony of the defendant's witnesses through the eyes of the jurors. Though Lynch, the purchasing agent, apparently had full power to buy for the defendant this large tonnage of steel at a price abnormally high because of abnormal market conditions, it should be noted that counsel for the defendant when examining Lynch brought out from him that he did not, acting alone, make the purchase but reported the "matter" to his "principals" and on the next day he was advised by the defendant's vice president to go ahead and buy the ingots. The attorney for the defendant did not ask Lynch a single question about his authority to make the contract with Kennedy, nor did he ask him whether in reporting the proposed purchase he had informed the defendant of Kennedy's connection with the transaction. The attorney for the plaintiff, when cross-examining Lynch, likewise steered clear of these questions. He may have hesitated because the matter was not brought out in the examination in chief or because he was afraid of the answer. But aside from the plaintiff's strategy, the attorney for the defendant did not approach the subject when he could have had answers from Lynch as to whether he had informed the defendant of Kennedy's part in the matter and whether the defendant had authorized him to make the contract with Kennedy.

The only other witness for the defendant was its vice president at the time of the transaction, now its president. He testified particularly that he authorized the purchase of the steel ingots and generally as to "duties" of the purchasing agent, namely; to negotiate for material and machinery but that large contracts were always taken up with some official of the company. He was then asked:

"Has he [Lynch] any authority to make a contract *such as* is sued on in this case?"

That question was objected to and the objection sustained without a notation of an exception. It was followed by this one:

"Has he any authority to employ people to assist him in his office as purchasing agent?"

That question being objected to and the objection overruled, the examination continued as follows:

"A. He would employ people on a salary, but I never knew of a case where—

"Q. (interrupting). You mean in his office?

"A. Yes.

"Q. But I mean on the outside, to assist him in purchasing goods?

"A. He would not have authority to do that without asking permission."

There the examination in chief ended. Thus it appears the attorney for the defendant avoided asking its vice president the outright question whether he, as an official, or the defendant otherwise, had authorized Lynch to enter into the contract in suit, or whether Lynch had asked and had been given permission to make it. Also he did not inquire of the witness whether Lynch, when reporting the "matter," as he had testified, told him of the Kennedy aspect of the transaction. The testimony of the vice president on this subject was merely this:

"Q. Did he report to you the offer that he had from the Edgewater Steel Company for the purchase of these steel ingots?

"A. He did."

The attorney for the plaintiff, either because he felt himself restricted on cross-examination to matters inquired into on the examination in chief, or for other reasons, refrained from asking these questions and waived cross-examination. Thus the attorneys for both parties trod this ground warily. The defendant had two opportunities, one through Lynch and the other through its vice president, to show particularly and conclusively that Lynch had not informed its vice president of the Kennedy aspect of the transaction, and, similarly, it had two opportunities to show that it had not authorized Lynch to make the contract, all in respect to a time prior to the completion of the contract of purchase. It availed itself of neither opportunity and left the plaintiff's testimony on apparent authority stand unaffected. As we have said, this was meager, yet we think it was enough to warrant submission to the jury.

Accordingly the judgment is affirmed.