## UNITED STATES v. FIFTY-EIGHT DRUMS OF MATERIAL DESIGNED FOR MANUFACTURE OF INTOXICATING LIQUOR (J. C. DILWORTH & CO., et al.).

### No. P-1430.

District Court, W. D. Pennsylvania.

Feb. 5, 1930.

Louis E. Graham, U. S. Atty., of Beaver, Pa., and W. J. Aiken and J. H. Dilley, Assts. U. S. Atty., both of Pittsburgh, Pa., for the United States.

E. Lowry Humes, of Pittsburgh, Pa., for defendants.

McVICAR, District Judge.

This is a proceeding to condemn fifty-eight drums and the contents thereof under section 25 of title 2, of the National Prohibition Act (27 USCA § 39), which reads: "It shall be unlawful to have or possess any liq-

uor or property designed for the manufacture of liquor intended for use in violating this chapter or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in sections 434 to 454, and 456 of Title 17, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order."

The government alleges in its libel that it seized by virtue of a search warrant, August 15, 1929, fifty-eight drums with the liquid therein, in the building of the Consolidated Warehouse Company, located at Thirteenth and Pike streets, Pittsburgh, Pa.; that said liquid was designed for the manufacture of intoxicating liquor and intended for use, in violation of the National Prohibition Act. The prayer of the libel was that the property seized be condemned and forfeited to the United States to be disposed of in accordance with law.

An answer was filed to the libel by the Agricultural Chemical Company wherein it alleged that it was the owner of the drums and liquid seized; that the liquid was manufactured "for the exclusive purpose of a plant, tree or shrub spray, for the killing of insects, bugs and worms *and was suitable for such purpose only and for none other.*" It denied that the property was designed for the manufacture of intoxicating liquor. No evidence was offered by the respondent.

From the evidence offered by the government we find the following facts: That the Agricultural Chemical Company is a corporation organized under the laws of the state of New Jersey, having a plant at Newark, N. J.; that said company was the owner of the fifty-eight drums and the contents thereof, seized by the government August 15, 1929; that said property was shipped by respondent from its plant in New Jersey, to J. C. Dilworth & Company, at Pittsburgh, Pa., the shipment being made by railroad, and the consignee being the Agricultural Chemical Company. The drums were not labeled; the contents of said drums had a chemical analysis of approximately 42 per cent. alcohol and approximately 1.6 grams sodium hydroxid, commonly called caustic soda or lye, per hundred Cc; small amount of benzol and butyl alcohol and positive tests for sodium acetate.

The contents of said drums had no practical value as a plant, tree, or shrub spray; it was inefficient for the killing of insects; alcohol was not required therein as a solvent. The contents when seized was poisonous. The product could easily and readily be redistilled and the alcoholic contents used for beverage purposes.

On August 29, 1929, forty-five drums containing liquid were taken from the plant of the Midwest Chemical Company, Newark, N. J., to the plant of the respondent at Newark, N. J. The bill of lading read from Agricultural Chemical Company, Newark, N. J., to Agricultural Chemical Company, Baltimore. At the plant of the respondent, the directions as to the shipment were changed after a conference between the president of the respondent company and the driver of the truck, in which the forty-five drums were being carried; the driver was instructed to carry the same subject to further orders, and in pursuance to said orders, delivered the same at a distillery near Baltimore, in which stills, etc., were seized shortly after the delivery. In the month of May, 1929, near Erie, Pa., stills, alcohol, and drums were seized by government officials, the contents taken therefrom were substantially the same as the contents of the drums in this case, and the product in each case was the same.

The government contends that the evidence establishes that the property seized was designed for the manufacture of intoxicating liquor and intended for use in violation of the National Prohibition Act. The respondent contends that the affidavit in support of the search warrant did not show probable cause, and therefore that the evidence procured by virtue thereof should have been suppressed, being procured in violation of the Fourth Amendment; and further that the evidence of the government failed to show that the property seized was designed for the manufacture of intoxicating liquor for use in violation of the National Prohibition Act.

The Fourth Amendment to the Constitution reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The part of the Fifth Amendment to the Constitution applicable reads: "No person * * * shall be compelled in any Criminal Case to be a witness against himself."

Has the respondent waived the right to

object to the manner in which the evidence was procured? The seizure in this case was made August 15, 1929; the petition was filed August 22, 1929; the answer of the respondent was filed August 27, 1929; and the trial took place January 23, 1930. No motion was made to suppress the evidence procured by virtue of the search warrant, prior to the time of the trial.

"The common-law rule is that the admissibility of evidence is not affected by the illegality of the means by which it was obtained." Olmstead v. U. S., 277 U. S. 438, 467, 48 S. Ct. 564, 569, 72 L. Ed. 944. The reason for the common-law rule appears in Segurola v. U. S., 275 U. S. 106, 111, 112, 48 S. Ct. 77, 79, 72 L. Ed. 186, wherein the court said: " * * * a court, when engaged in trying a criminal case, will not take notice of the manner in which witnesses have possessed themselves of papers or other articles of personal property, which are material and properly offered in evidence, because the court will not in trying a criminal cause permit a collateral issue to be raised as to the source of competent evidence. To pursue it would be to halt in the orderly progress of a cause and consider incidentally a question which has happened to cross the path of such litigation and which is wholly independent of it."

The common-law rule has been modified so as to exclude evidence procured in violation of Amendment 4. The Supreme Court, in Olmstead v. U. S., supra, at page 463 of 277 U. S., 48 S. Ct. 564, 567, said: "But in the Weeks Case [232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177], and those which followed, this court decided with great emphasis and established as the law for the federal courts that the protection of the Fourth Amendment would be much impaired, unless it was held that not only was the official violator of the rights under the amendment subject to action at the suit of the injured defendant, but also that the evidence thereby obtained could not be received."

The Supreme Court has recognized the soundness of the reason in support of the common-law rule excluding such evidence by requiring that the person whose rights have been violated shall present the matter to the court seasonably in advance of the trial.

In Cogen v. U. S., 278 U. S. 221, 49 S. Ct. 118, 119, 73 L. Ed. 275, the court said: "Hence, a defendant will, ordinarily, be held to have waived the objection to the manner in which evidence has been obtained unless he presents the matter for the consideration of the court seasonably in advance of the trial; and he does this commonly by a motion made in the cause for return of the property and for suppression of the evidence."

This case does not fall within the exception to the general rule laid down in Agnello et al. v. U. S., 269 U. S. 20, 34, 46 S. Ct. 4, 7, 70 L. Ed. 145, 51 A. L. R. 409, wherein the Supreme Court stated: "Where, by uncontroverted facts, it appears that a search and seizure were made in violation of the Fourth Amendment, there is no reason why one whose rights have been so violated, and who is sought to be incriminated by evidence so obtained, may not invoke protection of the Fifth Amendment immediately and without any application for the return of the thing seized." Nor does it fall within the exception made in Gouled v. U. S., 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647.

█ A proceeding by the government to forfeit property is within the protection afforded by the Fourth and Fifth Amendments. In Boyd v. U. S., 116 U. S. 616, 634, 6 S. Ct. 524, 534, 29 L. Ed. 746, the court said: "As, therefore, suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this quasi criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution, and of that portion of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself." See, also, Hepner v. U. S., 213 U. S. 103, 111, 29 S. Ct. 474, 53 L. Ed. 720, 27 L. R. A. (N. S.) 739, 16 Ann. Cas. 960; U. S. v. Eight Packages & Casks of Drugs (D. C.) 5 F.(2d) 971, 976.

The reason for refusing to hear evidence in support of a collateral issue in a criminal trial before a jury also applies equally to a forfeiture proceeding tried before the court.

The respondent, having failed to present the matter of suppression of the evidence alleged to have been illegally obtained seasonably in advance of the trial, was not in a position to have it suppressed at the time of the trial.

The respondent's contention that the government officers violated Amendments 4 and 5 is predicated on the allegation that the affidavit in support of the search warrant does not show probable cause. The affidavit was not offered in evidence. The court, at the trial, called the attention of counsel to this fact. Can it be considered now?

The search warrant was issued by a United States Commissioner under section 623 of

18 USCA. It was the duty of the officer making the search to return the papers to the officer issuing the warrant. Under section 627, it was the duty of the Commissioner to file the search warrant, together with the affidavits and other papers, with the clerk of the court.

■ The record in the search warrant proceeding is not a part of the record in this case. If counsel had desired to have the affidavit in support of the search warrant considered, he should have offered it in evidence. In Pennsylvania, in a civil case, the statement of claim and the affidavit of defense ordinarily constitute the pleadings. The admissions contained in the pleadings are not evidence unless the admissions are offered in evidence. In Buehler v. U. S. Fashion Plate Co., 269 Pa. 428, 433, 112 A. 632, 634, the Supreme Court of Pennsylvania said: "While the pleadings in a case determine the issues, primarily they are not evidence for any purpose, unless made so by act of assembly. A fact averred in the statement of claim, and not specifically denied in the affidavit of defense, is an admitted fact, but does not become such for purposes of trial, unless put before the jury in one of three ways:" (The ways referred to were then stated.)

■ No reference has been furnished us by counsel on either side to any authority holding that courts would take judicial notice of a paper, such as an affidavit in support of a search warrant which was not offered in evidence. Respondent having waived the right to object to the manner in which the evidence was procured and having failed to offer the affidavit in evidence, it is not necessary to consider whether the affidavit showed probable cause or not.

■ Respondent further contends that the government has failed to establish that the liquid in said drums was designed for the manufacture of intoxicating liquor and intended for use in violation of the National Prohibition Act. The court is of the opinion that the evidence does establish that it was so designed and intended. This appears from the facts, namely, that the drums were not labeled; from the chemical analysis thereof, that the contents of the drums had no practical value for plant, tree, or shrub spray (as alleged by respondent in its answer); that the contents were inefficient for the killing of insects; that alcohol was not required as a solvent; that the contents could easily and readily be redistilled and the alcoholic content used for beverage purposes; that drums which were taken from the Midwest Chemical Company Works to respondent's works were, under the direction of the president of the respondent, changed as to consignment and transported to a distillery near Baltimore; and further that the same product was found at an illegal distillery near Erie, Pa., in May, 1929.

[6] While not considered in reaching the conclusion above, attention is called to the rule of law that where a party fails to call witnesses who are familiar with the facts at issue, there is a justifiable inference therefrom that their evidence would have been unfavorable, if called. In Kirby v. Tallmadge, 160 U. S. 379, 383, 16 S. Ct. 349, 350, 40 L. Ed. 463, the Supreme Court said: "As they had it in their power to explain the suspicious circumstances connected with the transaction, we regard their failure to do so as a proper subject of comment. 'All evidence,' said Lord Mansfield in Blatch v. Archer, 1 Cowp. 63, 65, 'is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted.' It would certainly have been much more satisfactory if the defendants, who must have been acquainted with all the facts and circumstances attending this somewhat singular transaction, had gone upon the stand, and given their version of the facts. McDonough v. O'Niel, 113 Mass. 92; Com. v. Webster, 5 Cush. [Mass.] 295, 316 [52 Am. Dec. 711]. It is said by Mr. Starkie, in his work on Evidence (volume 1, p. 54): 'The conduct of the party in omitting to produce that evidence in elucidation of the subject-matter in dispute, which is within his power, and which rests peculiarly within his own knowledge, frequently affords occasion for presumptions against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice.' " See 22 Corpus Juris, p. 115, and Henry's Pennsylvania Trial Evidence, § 51. If this rule was applied, it could be fairly inferred that the failure of respondent to call witnesses who could testify to the use of the product manufactured by respondent would justify the inference that their evidence would have been favorable to the government in this case.

■ Respondent being a corporation is not within the protection of the Fifth Amendment. Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652; Standard Oil Co. v. Roxana Petroleum Corp. (D. C.) 9 F.(2d) 453, 455.

For the reasons given, the prayer contained in the libel should be granted.

Let an order be prepared accordingly.