PEERLESS CASUALTY COMPANY et al., Defendants, Appellants,

v.

UNITED STATES of America, For the Use and Benefit of BANGOR ROOFING AND SHEET METAL CO., Plaintiff, Appellee.

No. 5142.

United States Court of Appeals First Circuit.

Feb. 27, 1957.

10. 320 U.S. 727, 64 S.Ct. 81, 88 L.Ed. 429.

John W. Ballou, Bangor, Me., Mitchell & Ballou, Bangor, Me., on the brief, for appellants.

Seth May, Auburn, Me., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered by the United States District Court for the District of Maine on April 27, 1956, in an action brought by the United States of America, for the use and benefit of Bangor Roofing and Sheet Metal Company, under the Miller Act, 49 Stat. 793 (1935), 40 U.S.C.A. §§ 270a–270d, ordering that plaintiff-appellee recover of the defendants-appellants the sum of $8,185.89 plus interest and costs.

This case arises out of a subcontract, executed on August 17, 1950, between Bangor Roofing and Sheet Metal Company, the plaintiff-appellee, and T. W. Cunningham, Inc., one of the original defendants,[1] which stemmed from the principal contract of August 16, 1950 between T. W. Cunningham, Inc. and the United States of America, providing for

---

1. It is not clear from the record whether T. W. Cunningham, Inc. is one of the appellants before this court.

the construction of buildings and utilities at Caswell, Maine. The defendants-appellants, Peerless Casualty Company and General Reinsurance Corporation, are sureties for Cunningham on a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract," pursuant to 40 U.S.C.A. § 270a (a) (2).

The sole issue presented is whether the plaintiff's suit commenced by the filing of a complaint on September 25, 1953, was instituted within one year after the date of final settlement of the principal contract between Cunningham and the United States of America, as provided by 40 U.S.C.A. § 270b(b).

It is set forth in 40 U.S.C.A. § 270c that where final settlement of a contract has been made, a certified statement by the Comptroller General of the date of such settlement shall be conclusive as to such date upon the parties.[2] In this case the Comptroller General certified August 28, 1952 as the date of final settlement. Since plaintiff instituted its suit approximately thirteen months after the certified settlement date, defendants made a motion for summary judgment which was denied by the district court in its opinion and order of October 28, 1955, stating that there was a genuine issue of material fact as to whether the date of final settlement, as certified by the Comptroller General, was supported by substantial evidence. Thereafter, the district court, with the consent of all the parties, held a hearing on the merits in order to ascertain the proper date of final settlement. The entire matter was submitted to the district court on various affidavits, exhibits and depositions.

The pertinent facts, as found by the district court, are as follows: The contract between Cunningham and the Government, which was to have been completed by April 5, 1951, was not fully performed until February 15, 1952. On December 27, 1951 the General Accounting Office sent a form questionnaire to the Corps of Engineers, United States Army, Office of the Division Engineer, in Boston, Massachusetts, hereafter referred to as the Division Office, for the purpose of ascertaining the facts from which the date of final settlement could be determined.

Before answering this questionnaire C. J. Murray, Chief of the Construction Division of the Division Office, on August 28, 1952 signed an office memorandum, addressed to the Chief of Legal Branch of the same office, which stated the account to date on the Cunningham contract, based on the contract and twelve change orders. The memorandum indicated a balance due the contractor, Cunningham, of $20,984.52 and an offsetting amount due the Government of $37,500 for liquidated damages for failure to complete the work on schedule, leaving a net amount due the Government of $16,515.48. On the basis of this memorandum, the Division Office in a letter dated August 29, 1952 recommended August 28, 1952 as the date of final settlement, explaining that on this date "the amount of the balance administratively found due *the Government* from the contractor under the contract was approved by C. J. Murray, Chief, Construction Division, New England Division, Corps of Engineers." (Emphasis in original.)

Subsequent to August 28, 1952 the Government reversed its previous posi-

<hr>

2. "§ 270c. *Same; right of person furnishing labor or material to copy of bond*

"The Comptroller General is authorized and directed to furnish, to any person making application therefor who submits an affidavit that he has supplied labor or materials for such work and payment therefor has not been made or that he is being sued on any such bond, a certified copy of such bond and the contract for which it was given, which copy shall be prima facie evidence of the contents, execution, and delivery of the original, and, in case final settlement of such contract has been made, a certified statement of the date of such settlement, which shall be conclusive as to such date upon the parties. * * *"

tion and waived its claim for liquidated damages by a modification to the contract whereby February 15, 1952, and not some other prior date, was accepted as the completion date of the Caswell Project. Accordingly, a new account was prepared and approved, which indicated a balance due the contractor, Cunningham, of $20,984.52.

The first manifestation of a change of attitude on the part of the Government was a letter, dated September 4, 1952, and signed by the contracting officer of the Division Office, informing Cunningham that the Caswell Project "has been accomplished in a satisfactory manner and is accepted as of February 15, 1952." A formal order, referred to as Change Order Thirteen, bearing the date of January 2, 1952 and establishing February 15, 1952 as the date of completion of the contract, was approved by the Chief Administrative Assistant to the contracting officer on September 17, 1952.

This order, expressly providing for acceptance by Cunningham, was received by Cunningham on September 24, 1952 and acceptance thereof was mailed on September 26, 1952 to the Division Office, arriving at the Division Office on September 29, 1952. On September 30, 1952 a final pay voucher, bearing that date, was executed, authorizing payment to Cunningham of $20,984.52, "as per estimate attached." The attached estimate, like the pay voucher, was designated "final" and both corresponded numerically—twentieth pay estimate and twentieth pay voucher, but the pay estimate was undated. The pay estimate recited that the contract completion date of February 15, 1952 was determined as

per Change Order Thirteen and indicated that C. J. Murray had approved the account as the "Contracting Officer Representative." The pay voucher and the attached pay estimate were mailed on September 30, 1952 to Cunningham and, upon being properly signed by Cunningham, they were returned on October 3, 1952 to the Division Office. Payment was made to Cunningham on October 9, 1952.

The General Accounting Office was first requested to provide a certificate of the date of final settlement of the Caswell Project by one not a party to this action in the spring of 1953. Before determining the final settlement date, the General Accounting Office made further inquiry beyond its questionnaire of December 27, 1951 by means of a letter, dated July 28, 1953, in which it requested the Division Office to furnish a copy of "the document approved by C. J. Murray on August 28, 1952, together with any additional information which may be required to clarify the circumstances under which payment was made by the Government subsequent to a determination that a balance was due the Government." [3]

The Division Office, in its reply of August 4, 1953, rather than enclosing the August 28, 1952 memorandum, submitted a copy of the undated final pay estimate, the original of which had been attached to the final pay voucher of September 30, 1952, and mistakenly identified it as the document that was approved by C. J. Murray on August 28, 1952 in establishing "the amount of balance *due the contractor from the Government* as $20,984.52." (Emphasis in original.) The Division Office's reply

---

3. If the office memorandum of August 28, 1952, approved by C. J. Murray, had been furnished by the Division Office to the General Accounting Office, in response to this letter, it would have disclosed that the letter of August 29, 1952, in stating that C. J. Murray had approved the balance "due *the Government* from the contractor," referred to the difference between the liquidated damages of $37,500 owed by Cunningham to the Government for fail-

ure to complete the work on time and the $20,984.52 owed by the Government to Cunningham which resulted in a balance of $16,515.48 due the Government from Cunningham. However, Change Order Thirteen, as accepted by Cunningham on September 26, 1952 and received by the Division Office on September 29, 1952, did away with the liquidated damages, leaving a balance of $20,984.52 due Cunningham from the Government.

of August 4, 1953 also stated that the letter "dated August 29, 1952, incorrectly indicated *this amount* to be due the Government from the contractor." (Emphasis added.) [4]

Apparently satisfied by this explanation and without further inquiry or other evidence, the General Accounting Office, on August 13, 1953, certified August 28, 1952 as the date of final settlement of the Caswell Project.

The plaintiff commenced suit by its complaint of September 25, 1953. Upon information received from Colonel Pattee of the Division Office in a telephone conversation, the plaintiff alleged in its complaint that September 30, 1952, was the date of final settlement. However, on October 6, 1953, the General Accounting Office issued a certificate to the plaintiff, specifying August 28, 1952, as the date of final settlement.

The August 28, 1952 memorandum, which the General Accounting Office had originally requested of the Division Office in hopes of clarifying the discrepancy between the pay voucher of September 30, 1952 (payment to the contractor) and the account stated as of August 28, 1952 (balance due the Government), was finally received by it on January 12, 1955.

The defendants by their answer admitted that the sum of $8,185.89 "remains due and unpaid" and set up the statute of limitations as a defense. The district court in granting recovery to the plaintiff held that plaintiff's action was instituted within one year after the date of final settlement of the contract. It did so by concluding that 40 U.S.C.A. § 270c, which provides that the date of final settlement as certified by the Comptroller General is conclusive upon the

parties, was amended by a recent statute, 68 Stat. 81 (1954), 41 U.S.C.A. § 321, which reads as follows:

"§ 321. * * *

"No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fradulent [sic] or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence. * * * *"

Applying the above statute, the district court held that the decision of the Comptroller General in certifying August 28, 1952 as the date of final settlement was not supported by substantial evidence. Thereupon, the district court, by reviewing all the evidence, including evidence that was not before the official who certified the final settlement date as August 28, 1952, determined that the final settlement date could not have occurred before September 29, 1952. The basis for this determination being that the final pay voucher and pay estimate, which the district court considered the only documents which contained all of the information necessary to fulfill the requirements of a final settlement, could not have been executed before receipt of Change Order Thirteen, as

---

4. The words "this amount" are misleading since they seem to indicate that the letter of August 29, 1952 stated that $20,984.52 was due the Government from the contractor, whereas, from the record before us it appears that the aforementioned letter, in stating that "the amount" of the balance due the Government had been found, referred to the memorandum of August 28, 1952. Reference to the August 28, 1952 memorandum plainly reveals the amount due the Government from the contractor was $16,515.48, this being the difference between the liquidated damages of $37,500 and the sum of $20,984.52 due the contractor.

approved by Cunningham, at the Division Office on September 29, 1952.

▉▉▉▉ We believe that 41 U.S.C.A. § 321 by its plain import is not applicable to the situation before us. This statute deals with *contract* provisions that limit judicial review of administrative decisions. It does not concern the pleading of a defense afforded by another *statute*, which is the situation in the instant case. The language of 41 U.S.C.A. § 321, it seems to us, relates only to the standard disputes clauses in Government contracts which give the decisions of administrative officers finality or conclusiveness in contractually designated situations. The case before us involves a statute authorizing an administrative officer, the Comptroller General, to conclusively determine a specific fact.

The conclusive determination of the final settlement date of a contract by the Comptroller General, as provided by 40 U.S.C.A. § 270c, is an essential prerequisite to the running of the one year statute of limitations provided in 40 U.S.C.A. § 270b(b). It seems that Congress sought to expedite the determination of these matters by placing them in the hands of the Comptroller General who is best equipped to deal with them. If it wanted to extend the reviewability thereof by the courts it could have employed language to that effect. In the absence of such language it is difficult to conclude that 41 U.S.C.A. § 321 amends 40 U.S.C.A. § 270c.

Furthermore, we think that the legislative history of 41 U.S.C.A. § 321 "clearly indicates that the statute was not intended to alter limitations statutes otherwise applicable." Atlantic Carriers v. United States, D.C.S.D.N.Y. 1955, 131 F.Supp. 1, 4. The purpose of the statute is set forth in 2 U.S.Code Cong. & Adm.News, p. 2191, H.R.Rep.No. 1380, 83rd Cong., 2d Sess., 1954:

"The purpose of the proposed legislation, as amended, is to overcome the effect of the Supreme Court decision in the case of United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154 [96 L.Ed. 113], rendered on November 26, 1951, under which the decisions of Government officers rendered pursuant to the standard disputes clauses in Government contracts are held to be final absent fraud on the part of such Government officers."

The Supreme Court in the Wunderlich case specifically had before it a standard disputes clause in a Government contract providing that all disputes involving questions of fact shall be decided by the contracting officer with the right of appeal to the head of the department whose decision shall be final and conclusive. That case did not involve, in any way, 40 U.S.C.A. § 270c, the statute in the instant case.

Moreover, the House Committee in 2 U.S.Code Cong. & Adm.News, p. 2196, H.R.Rep.No. 1380, 83rd Cong., 2d Sess., 1954, after reciting that this legislation is exactly the same as that proposed by the Comptroller General on December 30, 1953, quotes with approval the following excerpt from the letter of the Comptroller General: " * * * In my judgment the substitute language will accomplish what we have been striving for all along and will place the General Accounting Office in precisely the same situation it was in before the decision in the Wunderlich and Moorman [5] cases." This language certainly does not indicate that the Comptroller General expected the enactment of the proposed statute to amend the power given him by 40 U.S.C.A. § 270c.

▉▉▉▉ Having concluded that 40 U.S.C.A. § 270c stands as originally enacted, we turn to the possible exceptions to its provision that the finding of the settlement date by the Comptroller General "shall be conclusive as to such date upon the parties." It appears that no circuit court and only a few district courts have considered this question to this time.

---

5. United States v. Moorman, 1950, 338 U. S. 457, 70 S.Ct. 288, 94 L.Ed. 256, also dealt with a standard disputes clause in a Government contract.

It can be gathered from these cases that it is necessary to establish fraud or such gross mistake as would imply bad faith before the certificate of the Comptroller General can be set aside. United States ex rel. and for Use and Benefit of Korosh v. Otis Williams & Co., D.C.D.Idaho 1939, 30 F.Supp. 590. See also United States for Use of Strona v. Bussey, D.C.S.D.Cal. 1943, 51 F.Supp. 996; United States, for Use and Benefit of Tobin Quarries, Inc., v. Glasscock, D.C.E.D.Mo.1939, 27 F. Supp. 534. Since the district court did not find and the record does not reveal either fraud or such gross mistake as would imply bad faith the certificate of the Comptroller General prevails. The plaintiff cannot claim as of right a broader review by the courts, for, it must be noted, that "except when the Constitution requires it, judicial review of administrative action may be granted or withheld as Congress chooses." Estep v. United States, 1946, 327 U.S. 114, 120, 66 S.Ct. 423, 426, 90 L.Ed. 567.

 Here the plaintiff cannot avoid the conclusive effect of the Comptroller General's certificate by asserting that 40 U.S.C.A. § 270c is unconstitutional. The plaintiff's right of action against the defendants, since it is statutory, exists only as conditioned by the statute. See United States ex rel. Texas Portland Cement Co. v. McCord, 1914, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893. Furthermore, the statute, having been enacted prior to the execution of the bond, must be read into the bond and its provisions treated as part of the original agreement. By this reasoning it can be concluded that the parties agreed, as they had a right to do, that the Comptroller General's certificate would be conclusive of the final settlement date. United States, for Use and Benefit of Tobin Quarries, Inc., v. Glasscock, supra.

In view of the above, the plaintiff, which presumably completed its work under the contract prior to February 15, 1952, cannot prevail on its action commenced on September 25, 1953. In this connection, be it noted that the plaintiff did not present in the record any mitigating circumstances for its delay in bringing this action. On the plaintiff's own theory, September 30, 1952, was the date of final settlement, and plaintiff had plenty of time thereafter to file a suit within a year from August 28, 1952, the date of final settlement as determined by the Comptroller General.

A judgment will be entered vacating the judgment of the district court and remanding the case to that court for the entry of a judgment consistent with this opinion.