269 F.2d 752
 UNITED STATES of America, for the Use of James R. SODA, Appellee
v.
Charles B. MONTGOMERY, T/A Montgomery Construction Company and U. S. Fidelity & Guarantee Company, Appellants.
 No. 12897.
 United States Court of Appeals Third Circuit.
 Argued July 13, 1959.
 Decided July 31, 1959.
 
 John R. Lenahan, Scranton, Pa. (John V. Wherry, Wherry & Ketler, Grove City, Pa., on the brief), for appellants.
 L. M. Cailor, Youngstown, Ohio (John H. Bream, Harrisburg, Pa., on the brief), for appellee.
 Before McLAUGHLIN and KALODNER, Circuit Judges, and FORMAN, District Judge.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 At the first trial of this suit the defendants urged that plaintiff subcontractor was bound by the government contract with Montgomery, the primary contractor and therefore the latter did not owe Soda anything. They contended in addition that if Soda was not so bound, Montgomery owed him $10,876.41, not $13,871.41 as Soda asserted. Those issues were properly resolved by the trial court sitting without a jury and judgment was entered in favor of the plaintiff in the amount of his claim plus interest.
 
 
 2
 On appeal the defense that suit had been started more than a year after the date of the final settlement of the contract and so was barred by the Miller Act,[1] was actively urged for the first time though it did appear in the answer.
 
 
 3
 The opinion of this court[2] upheld the finding of the trial judge that there had been a separate contract between the parties and that the entire amount claimed by plaintiff was due him. However, because we concluded that the Miller Act time limit for this type of action was a condition precedent for its maintenance, we vacated the judgment and remanded the case for determination of "the true final settlement date of the contract."
 
 
 4
 At the second trial the defendants initially attempted to show that the final settlement date was on or about October 25, 1953, which would have made the commencement of the Soda suit too late. Further on in the course of the trial, after the Attorney Advisor of the Government General Accounting Office had testified, Montgomery, as stated by the trial judge in his opinion, "* * * nimbly changed his position from a contention that suit was filed too late, to the contention that suit was filed too soon." On this appeal the defense reverts to its earlier theory that plaintiff's action is outlawed by the statute. In line with this it asserts that the certificate of the Comptroller General determining the date of final settlement to have been May 6, 1954 is "* * * unsupported by substantial evidence, was determined arbitrarily by the Comptroller General and is therefore not binding upon the parties."
 
 
 5
 At a hearing on the matter after it had been returned to the district court, plaintiff, in accordance with Section 270c of the Miller Act,[3] produced a certificate of the Comptroller General showing that the final settlement date of the contract involved was May 6, 1954. Under the statute the Comptroller General's certificate "* * * shall be conclusive as to such date upon the parties." The defense argued the statement must be supported by substantial evidence. The trial judge out of an abundance of caution held a full hearing.
 
 
 6
 At that hearing R. E. Green, a witness called on behalf of the defendants, who said he had been in charge of the construction of the contract in question and a delegated representative of the contracting officer, testified that on October 25, 1953 (on which date defendants contended the contract was finally settled) Montgomery had a claim pending with the government for additional compensation relative to a changed condition of the contract. The witness stated that as a consequence Montgomery was not fully paid out at that time.
 
 
 7
 The plaintiff called as a witness, Oscar K. Blanchard, Attorney Advisor in the General Accounting Office. He identified the Certificate of Final Settlement of May 6, 1954 to be "* * * our official certification as required by the Miller Act." He explained carefully and in detail the steps from which "The determination of final settlement is then made in the light of the facts so disclosed and in the light of the precedence (sic) [precedents?] which originated mostly under the predecessor or prior Herd Act." Talking of the suit contract account he stated, "The date on which that account was given approval by the administrative or agency official authorized to place it in line for payment is shown to be May 6, 1954."
 
 
 8
 Mr. Blanchard made it very clear that the changes encountered in connection with the Montgomery work were within the general scope of the original contract and permitted under Article 3 of the basic agreement. The main change order No. 6 was attached to the contract and covered changes to and extras for the automatic sprinkler system which latter was included in the original construction called for by the contract. The additional work and equipment amounted to $4,498.00. The change order was acknowledged by the contractor and accepted by him. The witness stated that "The account that I referred to here shows that all work was completed, including the matter of the pump and the other equipment under change order No. 6 as of April 25, 1954, which is about two weeks prior to the time of this final account here."
 
 
 9
 Manifestly these defendants have failed utterly to carry the burden which was theirs of showing that the Comptroller General of the United States, the head of the General Accounting Office of the Government, fixed the date of final settlement of the suit contract without the support of substantial evidence and in arbitrary fashion. Congress has bestowed upon the Comptroller General as the government business officer and who possesses a staff expertly equipped to conclude such problems accurately and promptly, the final word as to the termination of a Miller Act type of contract. The entire record bespeaks proper performance of that duty. What happened was that the government, acting specifically within the contract, had Montgomery make certain necessary changes in the construction for which he was paid in accordance with the agreed terms. That extra work ran the actual completion date beyond the time when the basic construction had been virtually finished. The testimony in appellants' case itself points this out.
 
 
 10
 Under the facts and law the date on which the Comptroller General certified that final settlement of the Montgomery contract had been made is conclusive on the parties in accordance with the directive of Section 270c. Peerless Casualty Company v. United States, etc., 1 Cir., 1957, 241 F.2d 811. See also United States ex rel. and for Use and Benefit of Korosh v. Otis Williams & Co., D.C.E.D. Idaho 1939, 30 F.Supp. 590; United States for Use of Strona v. Bussey, D.C. S.D.Cal.1943, 51 F.Supp. 996; United States for Use and Benefit of Tobin Quarries, Inc. v. Glasscock, D.C.E.D.Mo. 1939, 27 F.Supp. 534.
 
 
 11
 The second trial of this litigation has satisfactorily accomplished the purpose for which it was remanded. It has now been firmly established that appellee's suit was commenced within one year of the final settlement of the contract from which it derives.
 
 
 12
 Appellee argues strongly that the present appeal is merely for purposes of delaying proceedings on the district court judgment. He asked therefore that his damages be increased in accordance with our Rule 34(2).[4] While the full record reveals little real excuse for this second appeal, enforcement of the rule is discretionary. We will withhold its application in this instance. This is not to be at all interpreted as any precedent for the future in a comparable situation.
 
 
 13
 The judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 49 Stat. 793 (1935), 40 U.S.C.A. § 270b (b)
 
 
 [2]
 3 Cir., 1958, 253 F.2d 509, 513
 
 
 [3]
 Section 270c reads:
 "The Comptroller General is authorized and directed to furnish, to any person making application therefor who submits an affidavit that he has supplied labor or materials for such work and payment therefor has not been made or that he is being sued on any such bond, a certified copy of such bond and the contract for which it was given, which copy shall be prima facie evidence of the contents, execution, and delivery of the original, and, in case final settlement of such contract has been made, a certified statement of the date of such settlement, which shall be conclusive as to such date upon the parties. Applicants shall pay for such certified copies and certified statements such fees as the Comptroller General fixes to cover the cost of preparation thereof. Aug. 24, 1935, c. 642 § 3, 49 Stat. 794."
 
 
 [4]
 This reads:
 "Damages for Delay. In all cases where an appeal delays the proceedings on the judgment or decree of the district court, and appears to have been sued out merely for delay, damages at a rate not exceeding 10 per cent., in addition to interest may be awarded upon the amount payable under the judgment or decree."