**UNITED STATES of America, at the relation of and for the use of WESTINGHOUSE ELECTRIC SUPPLY COMPANY**

v.

**NATIONAL SURETY CORPORATION.**

Civ. A. Nos. 23965, 23966.

United States District Court
E. D. Pennsylvania.

Dec. 11, 1959.

Nathan Lavine, Philadelphia, Pa., for plaintiff.

Samuel B. Brenner, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

### Findings of Fact

The trial judge makes the following Findings of Fact:

1. The United States Army Corps of Engineers entered into a written agreement, No. DA–36–109–Eng–6193, with Joseph W. Montgomery, trading as Montgomery Construction Co., dated March 26, 1956, for construction by Montgomery of Nike Site 78 at Edgemont, Pennsylvania, for the contract price of $543,915.

2. The United States Army Corps of Engineers entered into a written agreement, No. DA–36–109–Eng–6194, with Joseph W. Montgomery, trading as Montgomery Construction Co., dated March 26, 1956, for construction by Montgomery of Nike Site 97 at Eureka, Pennsylvania, for the contract price of $544,709.

3. The defendant, The National Surety Corporation, as surety, and Joseph W. Montgomery, trading as Montgomery Construction Co., as principal, pursuant to the provisions of the Miller Act executed and delivered to the United States of America their two separate joint and

several bonds, both dated March 26, 1956, conditioned for the prompt payment to all persons supplying labor and material in the prosecution of the construction of the said two Nike Sites, 78 and 97. The amount of the bond with reference to Nike Site 78 was $271,957.50 and the amount of the bond with reference to Nike Site 97 was $272,354.50.

4. Nike sites consist primarily of storage facilities, launching equipment and guidance equipment for Nike missiles, which are an integral part of our country's national defense.

5. Nike Site 78, located at Edgemont, Pa., and Nike Site 97, located at Eureka, Pa., are both within the territorial jurisdiction of this court.

6. These suits were commenced on January 17, 1958, by the use plaintiff.

7. The date of final settlement of both contracts involved was sometime after January 17, 1957.

8. At the time these suits were commenced, more than 90 days had elapsed since the last material was furnished by the use plaintiff for which a claim is made.

9. Joseph Montgomery, trading as Montgomery Construction Co., entered into a written contract with Maguire Engineering Co., Inc., on May 29, 1956 (plaintiff's Exhibit 1), which provided that Maguire Engineering Co., Inc., was to supervise the installation of the electrical work comprehended for Nike Sites 78 and 97 and to prepare material lists and obtain prices from electrical suppliers. The lists were to be presented to Montgomery Construction Co. for approval before orders were placed, excepting when, in the opinion of the Maguire Engineering Co., Inc., such delay might cause undue hardship or expense to the Montgomery Construction Co., in which case orders were to be placed by the Maguire Engineering Co., Inc., with verbal approval.

10. Subsequent to the execution of the contract of May 29, 1956, between Montgomery Construction Co. and Maguire Engineering Co., Inc., it was agreed by the parties to the contract that the requirement that all orders be approved by the Montgomery Construction Co. be ignored and that Maguire Engineering Co., Inc. should order any necessary materials directly from the suppliers.

11. An account was opened with the use plaintiff by the Montgomery Construction Co.

12. Joseph W. Montgomery, trading as Montgomery Construction Co., by Joseph W. Montgomery and Edmund J. Maguire acting for Joseph W. Montgomery, requested the use plaintiff to supply and deliver substantial electrical materials, itemized in Exhibit A attached to the use plaintiff's Complaint in Civil Action No. 23965 and Exhibit A attached to the plaintiff's Complaint in Civil Action No. 23966, which materials are also itemized in plaintiff's Exhibits 6 to 144, inclusive.

13. All orders placed with the use plaintiff for the materials itemized in plaintiff's Exhibit 6 to 144, inclusive, were placed in accordance with the agreement between Montgomery Construction Co. and Maguire Engineering Co., Inc. in effect at the time they were placed.

14. There was a direct contractual relationship between Montgomery Construction Co. and the use plaintiff with respect to the purchase and sale of the materials itemized in plaintiff's Exhibits 6 to 144, inclusive.

15. The use plaintiff furnished and delivered to Joseph W. Montgomery, trading as Montgomery Construction Co., all of the material itemized in plaintiff's Exhibits 6 to 144, inclusive.

16. All of the materials itemized in plaintiff's Exhibits 6 to 144, inclusive, were required for the electrical construction of Nike Sites 78 and 97.

17. All of the materials itemized in plaintiff's Exhibits 6 to 144, inclusive, were actually incorporated in the electrical installation and construction of Nike Sites 78 and 97.

18. The prices charged by the use plaintiff for all of the materials itemiz-

ed in plaintiff's Exhibits 6 to 144, inclusive, were reasonable.

19. No payment has been made to the use plaintiff for or on account of the electrical materials itemized in plaintiff's Exhibits 6 to 144, inclusive.

20. The aggregate amount of the invoices for the materials itemized in plaintiff's Exhibits 6 to 144, inclusive, is the sum of $20,643.73, computed as follows: $11,895.14 for Nike Site 78 (Civil Action No. 23965) and $8,748.59 for Nike Site 97 (Civil Action No. 23966). The defendant is entitled to credits as set forth in Exhibit A attached to each of the two Complaints, as follows: Civil Action No. 23965 for Nike Site 78 $37.77, and Civil Action No. 23966 for Nike Site 97, $322.81. In addition, defendant is entitled to a further credit of $138 with respect to plaintiff's exhibit 105, representing a return of material as against the amount claimed in Civil Action No. 23965, and the further and additional credit of $138 with respect to plaintiff's Exhibit 105, representing a return of material as against the amount claimed in Civil Action No. 23966.

21. The amount due to the use plaintiff, therefore, is the sum of $20,367.73 for the electrical materials and, in addition thereto, interest upon each invoice (plaintiff's Exhibits 6 to 144, inclusive) from the due date of the said invoices.

22. Mr. Joseph W. Montgomery, the general contractor and the principal on the surety bond, was present in the courtroom and available as a witness at virtually all times during the trial.

23. All requests for Findings of Fact which are inconsistent with the foregoing are denied.

### Discussion

Westinghouse Electric Supply Company brought two actions against the National Surety Company under 40 U. S.C.A. §§ 270a–270e, commonly known as the Miller Act, on two bonds executed by the defendant as surety and Joseph W. Montgomery, trading as Montgomery Construction Co., as principal. These bonds were conditioned for the prompt payment to all persons supplying labor and material in the construction of Nike Sites 78 and 97 which Montgomery had contracted to construct for the United States Army Corps of Engineers. The two actions were consolidated for purposes of trial.

Section 270a of the Miller Act requires that before any contract, exceeding $2,000 in amount, for the construction of any public work of the United States is awarded to any person, he shall furnish to the United States a payment bond for the use and protection of all persons supplying labor and material in the prosecution of the work provided for in the contract.[1] The defendant does not question the fact that the bonds, which are the basis for these actions, were executed and were conditioned for the prompt payment to all persons supplying materials in the prosecution of the construction of Nike Sites 78 and 97.[2] It asserts, however, that these Nike Sites are not "public works" within the meaning of the Miller Act and that, therefore, that Act does not apply to these bonds. The Supreme Court has held that "public work," as used in the Miller Act, includes projects carried on with public aid to serve the interests of the general public. United States, to Use of Noland Co. v. Irwin, 1942, 316 U.S. 23, 30, 62 S.Ct. 899, 86 L.Ed. 1241.[3] It is not disputed that the construction of Nike Sites 78 and 97 was paid for with federal funds. It is also abundantly clear that these Sites serve the interests of the general public as vital elements of

---

1. 40 U.S.C.A. § 270a(a) (2).

2. See Request No. 4 of defendant's Requests for Findings of Fact (Document No. 16 in the Clerk's file for Civil Action No. 23965).

3. See, also, Peterson v. United States, 6 Cir., 1941, 119 F.2d 145; United States v. MacNeil Bros. Co., D.C.D.Mass.1939, 27 F.Supp. 180.

our national defense system.[4] Furthermore, § 270e of the Miller Act provides for the discretionary waiver of its provisions in awarding contracts for the "construction * * * of vessels, aircraft, munitions, material, or supplies of any kind or nature for the Army, Navy, Air Force, or Coast Guard * *."[5] This section leaves no doubt that Congress intended military projects to be included in the concept of "public works," as used in the Miller Act. It must, therefore, be concluded that Nike Sites 78 and 97 are "public works" within the meaning of the Miller Act.

 Defendant also asserts that, even if the Miller Act applies, the use plaintiff has failed to comply with § 270b, which sets forth the circumstances under which suit can be brought. The suits were not premature. Section 270b (a) provides that suit may be brought ninety days after the last material was furnished for which a claim is made. These suits were commenced with the filing of complaints on January 17, 1958. The last invoices for items for which a claim is made were dated June 3, 1957 (Exhibits P-137, P-138), and the last item shipped was on March 30, 1957 (Exhibit P-137). It is a reasonable inference that these items were received before October of that year. Nor were the suits instituted too late. Section 270b(b) states that no suit shall be commenced one year after the date of final settlement of the contract. The Comptroller General has certified that the date of final settlement of the two contracts was April 14, 1958 (Exhibits P-160, P-161). Section 270c makes his determination conclusive upon the parties. It has been held, however, that the Comptroller General's decision cannot be arbitrary but must be supported by substantial evidence. United States for Use of Soda v. Montgomery, 3 Cir., 1959, 269 F.2d 752; cf. Peerless Casualty Company v. United States, 1 Cir., 1957, 241 F.

2d 811. Even if defendant could show that the Comptroller General's determination was arbitrary, it is clear that on January 17, 1957, one year before this suit was commenced, a substantial amount of work remained to be done on Nike Sites 78 and 97 (N.T. 42-45). Therefore, it must be concluded that the suits were timely.

 Finally, the defendant asserts that the use plaintiff cannot bring this suit pursuant to the Miller Act because it failed to satisfy the condition that it give proper notice to the principal on the bond. Section 270b(a) of the Miller Act provides that any person having a direct contractual relationship with a sub-contractor, but no contractual relationship, express or implied, with the contractor furnishing the payment bond, shall have a right of action upon that bond provided he gives the principal notice within ninety days after the last item for which a claim is made was furnished. Defendant alleges that there was no direct contractual relationship between the contractor and the use plaintiff. In support of this contention, it argues that Maguire Engineering Co., Inc., was authorized to purchase material for Montgomery only after it received the latter's approval. Only 16 of the items sued for here were agreed to by Montgomery. It is contended that, since the remaining items were ordered by Maguire Engineering Co., Inc. without Montgomery's approval, the purchases were unauthorized, and therefore, the argument concludes, no direct contractual relationship between Montgomery and the use plaintiff can be established with respect to them.

The factual basis for this argument is not supported by the record. The evidence establishes beyond a doubt that Montgomery opened an account with the use plaintiff (N.T. 19, 20, 54, 55, 58, 59, 208, 209). On May 29, 1956, Montgomery and Maguire Engineering Co., Inc.

---

4. N.T. 3. The vital role of the Nike Missile Sites in our national defense is an appropriate subject for judicial notice, being common knowledge and not open to serious dispute.

5. 40 U.S.C.A. § 270e (Supp.1958).

entered into a contract which, among other things, provided that the latter was to prepare lists of necessary materials for Nike Sites 78 and 97. These lists were to be submitted to Montgomery for approval before any orders were placed. If, in the opinion of Maguire Construction Co., Inc., this procedure would result in delay which would cause undue hardship and expense to Montgomery, it was to place orders upon verbal approval (Exhibit P-1). There is uncontradicted evidence, however, that the approval requirement was entirely eliminated by mutual agreement of the contracting parties because of its impracticability under the circumstances (N.T. 147, 148). It is clear that any unapproved purchases made following this modification of the agreement were authorized and that there was a direct contractual relationship between Montgomery and the use plaintiff for the purchase of these items. The orders for the items represented by plaintiff's Exhibits 143 and 144, ordered on June 6, 1956 (Exhibits P-148, P-149), were approved (N.T. 271, 272; Exhibit P-152). None of the items for which a claim is made were ordered before this date. There is no direct evidence that orders for any of the other items for which a claim is made were approved by Montgomery. There is testimony that some orders were approved (N.T. 147, 148). The testimony of Mr. Maguire intimates that orders were placed according to the agreement then prevailing between Montgomery and himself (N.T. 147, 148). This is sufficient to satisfy the plaintiff's burden of going forward with the evidence. It is reasonable to infer from this that all orders were either approved or were placed after the approval requirement was eliminated. No effort was made by Mr. Montgomery, the principal on the bond, who was present in the courtroom when this testimony was brought out on cross-examination by counsel for the defendant, to show that the contract was not modified as contended by the use plaintiff or that some of the items for which a claim is made were ordered without approval prior to any modification. Such information was certainly within Mr. Montgomery's knowledge. His silence under these circumstances entitles the finder of fact to conclude that his testimony would have been unfavorable to his interests.[6] Thus, the use plaintiff has shown that it has satisfied all the prerequisites to bringing an action under the Miller Act.

The only remaining question is whether or not the use plaintiff has made out the elements essential to recovering on its claim. It was established beyond a doubt, through both oral and documentary evidence, that the items in issue were purchased from the use plaintiff by Montgomery personally or through his purchasing agent, Maguire Engineering Co., Inc., and that these items were properly delivered. There was uncontradicted evidence that the prices were reasonable (N.T. 29, 30) and defendant made no effort to satisfy its burden of proving payment.[7] The use plaintiff also endeavored to show that all the items for which a claim is made were actually incorporated in Nike Sites 78 and 97. The foreman at each site testified that all but three items were actually used to his knowledge (N.T. 299–302; 312-4). Mr. Montgomery admitted the use of one of these items which was included among each foreman's exceptions (N.T. 492, et seq.; defendant's Requests for Findings of Fact, Request No. 7, Document No. 16 in Clerk's file

---

6. National Tube Co. v. Kennedy, 3 Cir., 1927, 20 F.2d 824; *Burch v. Reading Company*, D.C.E.D.Pa.1956, 140 F.Supp. 136, 163, 164, affirmed 3 Cir., 1957, 240 F.2d 574, certiorari denied 1957, 353 U. S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914; United States v. Fifty-Eight Drums of Material, etc., D.C.W.D.Pa.1930, 38 F.

2d 1005. A prima facie case was spelled out *without considering this fact*. It was only considered in resolving the dispute as to what the actual facts were. See United States v. Cherkasky Meat Company, 3 Cir., 1958, 259 F.2d 89, 93.

7. United States, to Use of Roig v. Castro, D.C.D.P.R.1947, 71 F.Supp. 36.

for Civil Action No. 23965).. Mr. Maguire testified that all of the items purchased for the Nike Sites were used, with some minor exceptions where they were purchased in bulk for price advantages and there were some left over (N. T. 18, 21). There was no evidence that the excess materials included items purchased from the use plaintiff for which a claim is now made. Mr. Maguire's estimator stated that all of the items purchased were necessary for the construction of a Nike Site (N.T. 344, 345). Again, it must be noted that no effort was made to offer contradictory evidence on this point, despite the fact that these matters were known to Mr. Montgomery, who was always present in the courtroom and available to testify.[8]

While the use plaintiff satisfactorily established that all of the items for which a claim is made were actually incorporated in Nike Sites 78 and 97, I do not feel that this is necessary in order for it to recover under the Miller Act. The reasoning of Judge Hincks in United States v. Aetna Casualty & Surety Co., D.C.D.Conn.1944, 56 F.Supp. 431, in support of this interpretation is both sound and persuasive. It has been approved and followed in several other jurisdictions.[9] A Massachusetts District Court decision requires proof of actual use, but that was an alternative holding

unnecessary to the decision and no basis for the result is stated in the opinion.[10] The better view is to interpret the Miller Act so that it protects anyone who, in good-faith, furnishes material necessary to the prosecution of a public work expecting it to be actually used. Westinghouse Electric Supply Company clearly comes within this category in the instant case.

## Conclusions of Law

The trial judge makes the following Conclusions of Law:

1. Jurisdiction in these cases is predicated upon the provisions of the Miller Act, 40 U.S.C.A. § 270a et seq.

2. The Nike Sites for which the materials in question were furnished are "public works," within the meaning of the Miller Act, 40 U.S.C.A. § 207a et seq.

3. The use plaintiff is entitled to recover from the defendant the sum of $20,367.73, together with interest at the rate of 6% upon each invoice (plaintiff's Exhibits 6 to 144, inclusive) from the due date of each invoice.[11]

4. All requests for Conclusions of Law which are inconsistent with the foregoing are denied.

Plaintiff's counsel may submit appropriate orders for the entry of judgment.

8. See cases cited in footnote 6 above.

9. Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 1946, 153 F.2d 527; Commercial Standard Ins. Co. v. United States, 10 Cir., 1954, 213 F.2d 106; Fourt v. United States, 10 Cir., 1956, 235 F.2d 433; United States, for Use and Benefit of J. A. Edwards & Co. v. Bregman Construction Corp., D.C.E.D. N.Y.1957, 156 F.Supp. 784. St. Paul-Mercury Indemnity Company v. United States, 10 Cir., 1956, 238 F.2d 917, 924, is not inconsistent with the other decisions from the 10th Circuit cited above.

A careful reading reveals that the court gives the same meaning to "used in the prosecution of the contract work" that is given here to "furnished." It does not employ "used" to mean "actually incorporated."

10. United States for Benefit and Use of Westinghouse Electric Supply Co. v. Robbins, D.C.D.Mass.1954, 125 F.Supp. 25.

11. See Finding of Fact 20 (179 F.Supp. at page 601) for allocation of this total, $11,895.14 to Civil Action 23965 and $8,748.59 to Civil Action No. 23966.