**SEABOARD SURETY COMPANY,**
Appellant,

v.

**WESTWOOD LAKE, INC., et al.,**
Appellees.

No. 18077.

United States Court of Appeals
Fifth Circuit.

April 18, 1960.

Rehearing Denied May 30, 1960.

---

James A. Dixon, Joseph F. Jennings, Miami, Fla., Dixon, DeJarnette, Brad-ford, Williams, McKay & Kimbrell, Miami, Fla., for appellant.

Richard P. Kenney, Miami, Fla., Williams & Salomon, Miami, Fla., for appellee, Westwood Lake, Inc.

Stuart W. Patton, Samuel J. Kanner, Patton & Kanner, Miami, Fla., for appellee, American Cast Iron Pipe Co.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

HUTCHESON, Circuit Judge.

Including the State Court proceedings against Westwood Lake, Inc., the owner, brought by American Cast Iron Pipe Co., a furnisher of material to the contractor, in which the receiver for the insolvent contractor intervened, there is quite a large record in this case. All, however, that is involved here is the correctness of a judgment entered in a suit brought by a surety, which had bonded a contractor, against an owner which had employed the contractor to work on the two projects covered by the bonds, one for $214,000, the other for $190,000, and also on other projects not so covered.

While the claim as made below was for a much larger amount, as pressed here it is: that the contractor had assigned to the surety all payments to become due him; that it had finished the two jobs the surety had bonded; that there were in balances due and unpaid to the contractor by the owner, on account of those jobs, sufficient moneys to pay the surety the $30,000 more or less that it had expended in payment of suppliers to the contractor on the two jobs; and that the surety was entitled to recover these sums from the owner out of balances due the contractor on these two jobs, either still in its hands or improperly diverted by it.

In addition to the owner, the suit made parties defendant the Mackle Company, alleged to be a co-contractor with Westwood, and the American Cast Iron Pipe Company, a furnisher of pipe to the contractor, to whom, as a lien claimant, Westwood had made large payments, some before and some after suit by it,

on account of moneys due American by the contractor.

On motion, the suit was dismissed as to American, on the ground that no claim for recovery was stated against it, and, after the dismissal of American with leave to amend, Seaboard amended and did not rename American as a party and did not appeal from the order of dismissal. Before the end of the trial, the suit as to Mackle, Inc. was voluntarily dismissed by plaintiff.

1. As material here, these are in substance:

"Findings of Fact.

\* \* \* \* \*

"7. Westwood Lake, Inc. was engaged in the development, in South Dade County, of several residential suburbs. In this suit we are concerned only with Westwood Lake Additions 2 and 3.

"8. Westwood had constructed as part of its project a water treatment and sewage disposal plant which was ultimately to furnish water and to supply sewerage facilities for the original subdivision and eleven additions.

"9. As each subsequent addition was developed a contract was let for the installation of water—and sewer-pipes. Constructors of Florida, Inc. (hereafter called the 'Principal'), not a party to this suit, was awarded the contract for such work in addition 2 at a contract price of $214,000.00 and in addition 3 at a contract price of $190,000.00.

"10. On each of these last two mentioned contracts, a payment and performance bond was written by Surety.

"11. Owner subsequently awarded to Constructors another contract to lay pipe from the water-plant to a subdivision, known as Miller Heights. Westwood was not the owner of, nor did it have any interest in, Miller Heights other than to supply water to it. No bond was written on this contract.

"12. In each of the applications for the bonds, mentioned in Finding No. 10, there was contained a blanket provision that:

"In further consideration of the execution of said bond, the undersigned in the event of any breach, delay or default in said contract, failure of the undersigned to promptly pay, satisfy and discharge any and all obligations which might constitute possible claim under the bond, or breach of the terms of this agreement hereby assigns, transfers and conveys to the Surety all the deferred payments and retained percentages, and any and all monies and properties that may be due and payable to the undersigned, or that thereafter may become due and payable to the undersigned on account of said contract \* \* \*.

"13. Principal ordered pipe from American Cast Iron Pipe Company, who furnished, to the principal, pipe which was used in Westwood Lake Additions 2 and 3 and also on the Miller Heights job.

"14. In the spring of 1957 the principal got into financial difficulties, and the Surety stepped in and made payments in order to protect its interests. At this time the work on Additions 2 and 3 had been substantially completed.

"15. On April 4, American Cast Iron Pipe Company filed a claim of lien against additions 2 and 3 and against an easement in the right of way of S.W. 48th Street.

"16. On April 11, Surety, took so-called supplemental assignments or indemnities from Constructors, by the terms of which there were assigned Constructors' contract balances on Westwood Lake second and third additions as well as on the Miller Heights job, and which purported to cover other indebtedness of Constructors to Surety as well as indebtedness under these particular bonds here involved.

"17. As far as appears from the evidence, the first indebtedness paid by the 'Surety' was by check dated May 7, 1957, apparently for reimbursement of an outside third party who had advanced money to Constructors for running expenses. It is impossible to fix a specific earlier date for the default by Constructors (Principal) in payment. The burden was upon Plaintiff (Surety) to show such a default in order to bring into play the future assignments contained in the bond application. The earliest possible date from which Plaintiff's assignments can be said to date upon the present record

Tried to the court without a jury, Westwood's defenses were: that there were no balances due the contractor in its hands; and that it had fully and correctly paid the contractor, or claimants through and under the contractor, who were entitled thereto, all moneys that it owed the contractor.

At the conclusion of the lengthy trial, the district judge filed findings of fact and conclusions of law[1] and a judgment

dated Sept. 1, 1959 based thereon, that the plaintiff take nothing by its suit and that the defendants, The Mackle Co., Inc and Westwood Lake, Inc., go hence without day.

is April 11, some seven days subsequent to the filing of its mechanic's lien by American Cast Iron Pipe Co.

"18. Plaintiff, 'Surety', admits that there is owing to American Pipe some $19,000.00 to $20,000.00 on its bond on additions 2 and 3 but has refused to pay for the pipe delivered to the Miller Heights job, which had not been bonded.

"19. Plaintiff, 'Surety', subsequent to June 14, 1957, paid out some $31,000.00 to, as far as appears from the record, non-lien-holding creditors of Constructors, taking in return assignments of the claims of these creditors against Constructors and/or Westwood Lake, 'Owner.'

"20. Subsequent to the filing of the mechanic's lien but prior to the suit for foreclosure the lien was transferred to a bond deposited for that purpose; thereafter American filed suit in the State Court to foreclose its lien and joined Constructors (Principal) and Westwood (Owner) as defendants. 'Surety' was not joined in the State Court proceeding. Constructors' Bankruptcy Receiver intervened in the lien foreclosure proceeding.

"21. While the foreclosure proceeding was pending, attorneys for Westwood (Owner) wrote a letter to Constructors (Principal) announcing its intention to pay $50,000.00 on account to American Cast Iron Pipe. Attorneys for Surety wrote a letter of protest, warning Owner that such a payment would be at the latter's peril.

"22. While the State Court foreclosure proceeding was still pending, Plaintiff (Surety) filed this Federal Court action to recover from defendant, Westwood Lake, Inc. (Owner) as assignee of Constructors' rights, the contract balances alleged to be due from the owner to Constructors.

"23. In the State Court foreclosure suit it was adjudicated:

"a. that American Cast Iron Pipe Company and Davis Meter & Supply Co., Inc. had theretofore sold and delivered to Constructors of Florida, Inc., certain cast iron pipe to be used in the construction of a sewer distribution system for the Westwood Lakes, American having sold and delivered materials to the subject properties in the sum of $129,395.68, and David Meter & Supply

Thereafter, on September 24, 1959, plaintiff gave notice of appeal from the judgment in favor of the defendant, Westwood Lake, Inc. and also from the order entered February 26, 1958, dis-

Co., Inc. having sold and delivered materials to the subject properties in the sum of $3,228.36.

"b. that on the 4th day of April, 1957, American, and on the 12th day of June, 1957, Davis filed claims to, and duly perfected a lien against, the described property.

"c. * * *

"d. that subsequent to the filing of said claim of lien Westwood Lake * * Westwood Lake, Inc. made payment to the American Case Iron Pipe Company, in the sum of $50,000.00, said sum representing monies owed by Westwood Lake, Inc. to Constructors of Florida, Inc., under the contracts between said parties and said sum representing monies owed by Constructors of Florida, Inc. to American Cast Iron Pipe Company for furnishing materials to improve the subject real property. That said payment was made after having given notice to Constructors of Florida, Inc., pursuant to the provisions of F.S.A. [§] 84.05, and Constructors of Florida, Inc., having made no objection to the same, the court found that said payment constituted proper payment under the Florida Mechanic's Lien Law.

"e. that subsequent to the filing of the mechanics lien by American, there was paid to American by Constructors of Florida $3460.00 and pipe of a value $22,638.00 comprising a portion of the pipe making up American's total claim and delivered to the Westwood Lakes project; that as a result Constructors is entitled to a credit of $19,632.51, leaving still due and owing from Constructors to American the sum of $56,303.17.

"f. * * *

"g. that Constructors failed and refused to complete the improvement of the subject property pursuant to the contracts between Constructors of Florida, Inc. and Westwood Lakes, Inc., and the latter was required to spend the sum of $5,267.83 for the completion of said jobs. That the total balance due and owing from Westwood Lakes, Inc. to Constructors of Florida, Inc. for work done pursuant to the contracts for the improvement of the Westwood Lakes and the Miller Road extension projects was the sum of $115,801.48. That the total balance due from Westwood Lakes, Inc. to Constructors of Florida, Inc., after

missing its complaint with prejudice as to American Cast Iron Pipe Co., and American having moved to dismiss the appeal as to it, as untimely, all the matters at issue here were submitted on briefs and oral argument and are ready for disposition.

Disposing first of the motion of appellee, American Cast Iron Pipe Co., to dismiss the appeal, we think it sufficient to say that we are of the clear opinion that, for the reasons stated and the authorities cited by it in its brief[2] in support of its motion to dismiss, appellant's position that the order dismissing its complaint as to American was not final but interlocutory and not appealable until a judgment was entered disposing of the whole case, is completely untenable.

We turn, then, to the real issue in the case, whether, as claimed by the appellant, the effect of the State Court judgment and, therefore of the judgment appealed from, was to divert to a creditor on another job, which was not bonded at all, unpaid contract balances due on the two construction contracts appellant had bonded as surety, and to which, the contractor having defaulted, it was entitled, and a palpable miscarriage of justice has resulted therefrom.

In support of its claim, the appellant Surety argues that the district judge erred in finding that it was bound by the result of the state court suit, in which the contractor, its principal, intervened, and in not concluding that the proof offered in this case did not require a re-

---

the deduction of the proper payment in the sum of $50,000.00 made to Cast Iron Pipe Company, Inc. and the deduction of those sums spent by said Westwood Lake, Inc. for the completion of said job was in the sum of $60,535.65.

"h. that the mechanic's liens filed against the subject property described therein by American Cast Iron Pipe Company and Davis Meter and Supply Co., Inc. complied with the requirements of law in all respects and said liens were good, valid and subsisting against the subject premises to the extent of the amount found due from Westwood Lake, Inc. to Constructors of Florida, Inc.. as set forth above, to wit, the sum of $60,533.65.

"i. * * *

"j. * * *

"k. that American Cast Iron Pipe Company have and recover of the above named defendants, jointly and severally, the sum of $56,303.17.

"l. that Davis Meter & Supply Co., Inc. have and recover of Westwood Lake, Inc. and Constructors of Florida, Inc. the sum of $575.60 and in lieu of the payment of said sum that the properties described in the claim of lien filed by the said Davis Meter & Supply Co., Inc. upon appropriate notice, be sold for the satisfaction of said lien.

"m. that all sums of money remaining due and payable by Westwood Lake, Inc., after the payment of the sums provided therein to be paid to American Cast Iron Pipe Company and Davis Meter & Supply Co., Inc., and the costs as taxed in these proceedings, be paid to John Nicholas, as receiver for Constructors of Florida, Inc.

"24. This judgment was not appealed and has in fact been satisfied in full.

"25. There is at the present time no balance due to Constructors of Florida, Inc., remaining in the hands of Westwood Lake, Inc., under the contracts with Constructors of Florida, Inc.

"Conclusions of Law.

"1. The Court has jurisdiction of the parties and of the subject matter under 28 U.S.C. [§] 1332.

"2. Plaintiff Surety Company, which sues as assignee of the Principal, Constructors of Florida, Inc., is bound by any defenses valid against Constructors.

"3. Plaintiff Surety Company, as assignee of Constructors, is in privity therewith and having had notice of the State Court action is bound by the disposition made therein of contract balances owing to its assignor.

"4. Since there are no longer any contract balances owing from Defendant, Westwood Lake, Inc., to Constructors, Plaintiff's assignor, Plaintiff cannot prevail in this suit.

"5. Judgment to be entered upon notice in favor of Defendants, Westwood Lake, Inc., and the Mackle Company, Inc., with Plaintiff to pay the cost."

2. Higgins v. Shenango Pottery Co., 3 Cir., 256 F.2d 504; General Time Corp. v. Padua Alarm Systems, Inc., 2 Cir., 199 F.2d 351; Siegmund v. General Commodities Corp., Ltd., 9 Cir., 175 F.2d 952; MacKay v. Loew's Inc., 9 Cir., 182 F.2d 170, 18 A.L.R.2d 348.

sult contrary to that reached in the state court.

The appellee, on its part, urges upon us that whether the result of the state court case was absolutely, or only prima facie, binding on the surety in the federal court, the result reached in the federal court was correct, and the judgment must stand since there was no evidence contrary to the determination of the state court, that it had paid to, or for the account of, the contractor all the balances in its hands due on the two contracts. In addition, it insists that there was no sufficient evidence that, as claimed by plaintiff-appellant, the result was unjust as to the surety for the reasons stated by it, that in making these payments to, or for the account of, the contractor, Westwood had diverted to other jobs not bonded by it monies due on the jobs Seaboard had bonded and to which it had preference right.

A careful examination of the findings made in the state court and in the district court below convinces us: that the surety has not established its right to the equity it asserts, to have the owner pay again the moneys it has already paid the contractor, this time, however, to the surety who had guaranteed the owner against loss from having to pay twice and who has profited by the payment to American of the amounts admittedly due by the surety to it. We hold, therefore, that, under the evidence as a whole, the district judge was right in his conclusion of law No. 4: "Since there are no longer any contract balances owing from defendant, Westwood Lake, Inc., to Constructors, Plaintiff's assignor, Plaintiff cannot prevail in this suit."

In Town of River Junction v. Maryland Casualty Co., reported in 5 Cir., 110 F.2d 278 and 5 Cir., 133 F.2d 57, 59, this court dealt with a situation somewhat similar to that prevailing here. There a contractor, with a clause in its bond similar to that in the bond here, which had assigned to the surety, under certain conditions, retained payments, borrowed money from a bank and the bank used the money in part to pay creditors of the contractor. The surety sued the Town and the Bank for a balance claimed to be due it as assignee of the contractor. The district court gave the surety a judgment and Town and Bank appealed. This court, one judge dissenting, reversed the judgment and remanded the cause for trial anew. On the new trial the Town and the Bank sought to show that the money had been expended for claims which the Surety was bound to pay and for which, if they had not been paid by the bank, the surety would be liable. The district judge, deciding this issue against Town and Bank, gave judgment for the surety, they appealed, and this court, holding that the decision was in part clearly erroneous, said:

"* * * The surety was bound to see that all labor and material claims were paid, and to carry the job to completion. The claims of laborers and materialmen were a charge or incumbrance on the money due the contractor by the town, and against the surety's own bond * * * The surety has gotten its obligations discharged by the money furnished by the bank, with the cooperation of the town. The surety has no moral or equitable right to have the bank pay back or the town to pay again. The surety has chosen an equitable forum. In the original complaint, he asserts his claim against the bank for $5,105.77 paid it by the town thus: 'that in equity and good conscience the said Gadsen County State Bank now holds said sum of money in trust for the benefit of your orator.' We think equity and good conscience entirely the other way. *Whether or not the bank could actively enforce a subrogation against the surety of the claims its money paid, it can at least prevent a recovery in equity by the surety.*" (Emphasis supplied.)

Here the surety admits that it owed, but did not pay, American $20,-000, and that the payment to American by Westwood discharged that obligation.

The situation standing thus with Westwood, the owner, having under a judgment in the state court, entered after a full trial, paid out all the monies that it owed the contractor, it would be unjust for the surety to recover against it without a clear and strong showing that the payments made by Westwood to the contractor were induced by fraud or other overreaching, or were palpably wrong.

There could be no argument about this if the judgment, which directed Westwood to pay out the balances due it to the contractor, was absolutely binding on the surety, and appellee insists that, on this record with the judgment being prima facie binding on the surety, appellant stands no better here because it did not in this suit offer any evidence which established, with the clarity and certainty required, that there was fraud or wrongdoing in connection with the State Court trial or the payments ordered and made in that suit, or that the result thereof was in any respect contrary to right and equity.

This court has had occasion to write several times on the question of the effect of judgments in suits upon sureties who, though not parties to, had knowledge of, them.

In a suit arising in Florida, Lake County for Use and Benefit of Baxley v. Massachusetts Bonding & Insurance Co., 5 Cir., 75 F.2d 6, 7, this court went fully into the effect of a judgment against the contractor on a construction bond in a suit, to which the surety was not a party. There it was argued that the judgment which was obtained against the principal was "in the absence of a showing of collusion or fraud in its obtaining, conclusive against the surety". It was also argued that if the judgment was not conclusive, it was at least prima facie evidence requiring a verdict for him unless rebutted by clear proof, and that it, together with the positive testimony of the plaintiff Baxley and the other supporting evidence, clearly made an issue for the jury. In support of his claim that the judgment was at least prima facie evidence, many cases were cited. This court, reversing the case, on the plaintiff's appeal, for errors in the trial, stated at page 8:

"In view of another trial, we think it proper to say, upon the point appellant makes as to the effect of his judgment against Hardee, that while the authorities are apparently in dispute, we think the true statement of the law is this: Where it appears that the judgment against the defendant was obtained in a suit of which the surety had full knowledge, and which it had full opportunity to defend, the judgment therein is not only evidence, but conclusive evidence, against every defense except that of fraud and collusion in obtaining it. (authorities) Where it is not made to appear that the surety knew of and had opportunity to defend the suit, then the judgment is prima facie evidence that the surety is liable, sufficient to support a verdict unless it is rebutted by proof on the part of the surety that it was obtained through fraud or collusion, or that the loss or liability created by the judgment arose from acts other than those indemnified against under the conditions of the bond."

Tried again, it came back on the appeal of the same plaintiff, under the style of Lake County, for Use of Baxley v. Massachusetts Bonding and Insurance Co., 5 Cir., 84 F.2d 115, 117. The court below, in submitting the issue to the jury, charged that the prior judgment was not absolutely binding on the defendant but it would prima facie fix the amount of the indebtedness, and appellant complained that he should have charged that the introduction of the judgment cast upon defendant the burden of overthrowing it. We disagreed with this, saying:

"The burden was upon plaintiff throughout to establish his right to recover. (authorities)"

"The judgment against Hardee did not operate as an estoppel against defendant. It was evidence, sufficient indeed for recovery if no

evidence was introduced by defendant. When, however, defendant offered evidence, the judgment was like all the other evidence to be considered by the jury upon the question whether plaintiff had made out his case."

In a later case, United States v. Maryland Casualty Co., 5 Cir., 204 F.2d 912, this court, stating that the effect of the prior judgment was a matter of substance, and the law of the state controlled, held that, since in Alabama a judgment against the principal is not binding on the surety at all except under certain conditions, those conditions not appearing, the judgment was not binding at all.

Here appellant in effect concedes, and, if not, the authorities [3] compel the conclusion, that the judgment is at least prima facie binding on the surety.

██ We are of the clear opinion that, if treated as no more than this, considering, the record as a whole, the attitudes of the parties, and particularly that, if Westwood, the owner, is wrongfully cast in judgment, it will be made to pay the same sums twice, there must be a very clear showing, that the state court proceeding against the contractor wrought an injustice on the surety; and that this record cannot be read as making any such showing. It is entirely true, indeed there is specific evidence, that, in running these various jobs, the accounting system was confused and inaccurate, and, generally speaking, all the jobs were in effect treated as one,

payments being made from and in respect to each of them indiscriminately. In addition, there is specific and positive evidence that, while, in the state court, the receiver for the contractor for a time undertook to claim that American Cast Iron was seeking payment out of monies due on one job for pipe furnished to another, it was established that payments had been made indiscriminately, all the jobs being treated as one, and that, while the evidence showed that at a certain time there was a great deal more money left in one of the jobs than in another, this was due to the fact that the funds had been resorted to indiscriminately and no precise allocation made. The fact, then, of which the appellant tries to make so much, that at one time there was $103,000 still due on the jobs that it had bonded, and only about $15,000 due on the Miller Heights job, and that of the large sums due to American, a great part of them arose out of the Miller Heights job, is, under the court's findings, of no significance because there is other evidence in the record showing, or tending to show, that this result had been brought about by drawing from the Miller Heights job to pay monies due on the other jobs. In short, the records are in such a jumbled and confused state that it cannot be said that the district court erred in holding that the surety had failed to make good its claim, that monies due on the jobs it had bonded had been, to the surety's prejudice, diverted from those jobs to others.

The judgment appealed from is affirmed.

3. 50 Am.Jur., pp. 1036–1039, "Suretyship", Secs. 200–201; 72 C.J.S. Principal and Surety § 261, pp. 706–708; Merriman v. Lewis, 141 Fla. 832, 194 So. 349, at page 352.