**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Appellant,

v.

**HENDRY CORPORATION, Appellee.**

**No. 22692.**

United States Court of Appeals
Fifth Circuit.

Feb. 29, 1968.

Rehearing En Banc Denied
June 20, 1968.

Bert Lane, Pensacola, Fla., for appellant.

Stanley W. Rosenkranz, Tampa, Fla., for appellee.

Before WISDOM, BELL and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

The United States Fidelity & Guaranty Company, the Miller Act surety for Smith Engineering Construction Company, a defaulting government contractor, appeals from a summary judgment in favor of Hendry Corporation, the use-plaintiff. United States to Use of Hendry Corp. v. Smith Engineering & Const. Co., N.D.Fla.1965, 240 F.Supp. 189. The surety contends that the district court committed three major errors in granting summary judgment in favor of the plaintiff subcontractor. The alleged errors are first, the court's overruling the defendant's plea of the statute of limitations; second, its giving conclusive weight to a state judgment in a suit by the plaintiff against the surety's principal; and finally, its allowing the plaintiff attorney's fees. We conclude that the court below was correct on the first and third counts, but erred as to the second. Accordingly, we reverse and remand the case for trial.

\* \* \*

In 1954 Smith, the prime contractor, successfully bid for the job of constructing runway and taxiway fill at Eglin Air Force Base, Florida. In accordance with the Miller Act, 40 U.S.C. §§ 270a–270e, Smith obtained payment and performance bonds from Fidelity & Guaranty. Smith and Hendry agreed that Hendry would supply certain equipment for the job. Hendry was to receive rental fees plus a share of whatever profits developed. In the course of the job, difficulties developed so that the fill had to be constructed mechanically rather than hydraulically. As a result, Smith incurred considerable unexpected expense and could not complete the contract on time.

By the late summer of 1955 Smith had completed the job. Because of the unexpected difficulties, he attempted to obtain some sort of adjustment from the government. Finally, March 6, 1961, the Board of Contract Appeals reversed the contracting officer, awarded Smith more than $130,000 additional compensation, and extended the contract time by 86 days. Fidelity & Guaranty agreed to the extension and to increase the penalty sum of the bond by half the increase in the contract price. Smith never did pay Hendry the amount due on their subcontract. Hendry filed this suit against the surety April 16, 1962.

Meanwhile Hendry had filed an action in the Florida courts for an accounting and judgment against Smith in whatever amount was found owing. After a non-jury trial on the merits, the state court rendered judgment in Hendry's favor in the amount of $93,113.79. The same attorney represented Smith in the state case and both Smith and Fidelity & Guaranty in this case.

Upon the rendition of judgment in the state case, Hendry moved the district court here for summary judgment. The district court granted the motion on the

ground that the state decision was res judicata as to a surety with knowledge of and an opportunity to defend the suit against the principal. The district judge also allowed Hendry the maximum attorneys fees under Florida Statutes § 627.0905(2), F.S.A.

## I.

The Miller Act provided, at the time the present bond was signed,[1] that no suit should be commenced "after the expiration of one year after the date of final settlement of such contract." 40 U.S.C. § 270b(b). "Final settlement", as used in the Act, was a term of art. It did not mean final payment or accord and satisfaction, but rather the "unilateral determination by the Government of the consolidated contract account * * * as shown by its records." 37 Dec.Comp.Gen. 115 (1957). Section 270c provided the method of establishing the date of final settlement. Any unpaid laborer or materialman could request the Comptroller General to issue a certificate determining the date of the settlement, "which shall be conclusive as to such date upon the parties".

The courts have consistently held that section 270c meant what it said. "[I]t is necessary to establish fraud or such gross mistake as would imply bad faith before the certificate of the Comptroller General can be set aside. * * * The plaintiff cannot claim as of right a broader review by the courts * * *" Peerless Casualty Co. v. United States for Use and Benefit of Bangor Roofing & Sheet Metal Co., 1 Cir. 1957, 241 F.2d 811, 817. See also United States for Use of Soda v. Montgomery, 3 Cir. 1959, 269 F.2d 752; Golden West Const. Co. v. United States for Use and Benefit of Bernadot, 10 Cir. 1962, 304 F.2d 753; United States ex rel. and for Use and Benefit of Korosh v. Otis Williams & Co., D. Idaho, 1939, 30 F.Supp. 590; United

States for Use and Benefit of Tobin Quarries, Inc. v. Glasscock, E.D.Mo.1939, 27 F.Supp. 534.

There is no claim of fraud or bad faith in this case. The problem here is that the Comptroller General has issued two certificates stating different dates of final settlement. Initially he certified the date as August 11, 1955, but after the decision of the Board of Contract Appeals, he issued an "amended certificate" fixing the date of final settlement as June 21, 1961. If the statute began to run on the earlier date, Hendry's claim is barred. But if the statute did not begin to run until 1961, the parties agree the suit was timely filed.

Fidelity & Guaranty argues that the Comptroller General's certificate is conclusive even as to him, and that therefore he had no authority to amend the original certificate in the absence of fraud or bad faith. Hendry, on the other hand, insists that the certificate is conclusive only "as to the parties," and that the Comptroller General may make any amendments he deems necessary and equitable.

We agree with Hendry. We find nothing in the statute to indicate that the Comptroller General is bound by his original certificate and cannot act to correct a mistake or revise his determination in light of new developments. On the contrary, the statute shows the intention of Congress to place the responsibility for fixing the date of final settlement within the absolute, unreviewable discretion of the Comptroller General. See Peerless Casualty Co. v. United States for Use and Benefit of Bangor Roofing & Sheet Metal Co., supra. Absent convincing evidence of a contrary congressional intent, it would not be consistent with such a broad grant of discretion to hold that the Comptroller General is foreclosed from redetermining the date of final settlement.[2]

---

1. Congress amended the Act in 1959 to provide that the one year period would begin on the day "on which the last of the labor was performed or material was supplied * * *". 73 Stat. 279.

2. Illinois Surety Co. v. United States to Use of Peeler, 1916, 240 U.S. 214, 36 S. Ct. 321, 60 L.Ed. 609; R. P. Farnsworth & Co., Inc. v. Electrical Supply Co., 5 Cir. 1939, 112 F.2d 150, 130 A.L.R. 192,

Lane v. United States ex rel. Mickadiet, 1916, 241 U.S. 201, 36 S.Ct. 599, 60 L.Ed. 956 is closely in point. The statute there in question provided that the Secretary of the Interior's determination of the heirs of an Indian was to be "final and conclusive". The Secretary originally determined that two adopted children were the heirs of the Indian in question. Later, other relatives urged the Secretary to reopen the decision on the ground that the adoption had been procured by fraud. The adopted children took the position that because the original determination was "final and conclusive" the Secretary was without power to reconsider.

The Supreme Court rejected the argument:

> The words "final and conclusive" describing the power given to the Secretary must be taken as conferring, and not as limiting or destroying, that authority. In other words, they must be treated as absolutely excluding the right to review in the courts * * * [T]he right to review on proper charges of newly discovered evidence or fraud a previous administrative order * * * [is] of the very essence of administrative authority * * *. 241 U.S. at 209, 36 S.Ct. at 601.

For the same reasons we reject the surety's argument here.

Fidelity & Guaranty argues further that the statute authorizes the Comptroller General to issue a certificate only "in case final settlement of any such contract has been made * * *". The quoted language, the surety contends, indicates that Congress contemplated that there would be only one date of final settlement, and that only after it had come about, could the Comptroller General issue a conclusive certificate. There being but one date of final settle-

ment, the argument concludes, the Comptroller General's amendment is contrary to fact and therefore of no effect.

In support, Fidelity & Guaranty cites United States for Benefit and Use of Berkowitz v. Frankini Construction Co., D.Mass.1956, 139 F.Supp. 153, a case in which Judge Wyzanski held that the pendency of an appeal to the Board of Contract Appeals did not toll the passing of the date of final settlement. That case is inapposite for two reasons. First, the prime contractor's appeal was unsuccessful; and, more importantly, the Comptroller General did not issue an amended certificate. The real thrust of the case is that the Comptroller General's final pronouncement, whatever it may be, is conclusive on the parties.

While we might agree that there can be only one date of final settlement, we are convinced that the Comptroller General's decision is not reviewable on the ground that it is contrary to fact. The administrator's ultimate determination in this case was that the final settlement occurred June 21, 1961. Since that determination may not be challenged, the suit was timely filed.

## II.

The Miller Act provides:

"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, *in the United States District Court* for any district in which the contract was performed and executed *and not elsewhere * * *"* 40 U.S.C. § 270b(b).

Hendry argues that this statutory language does not affect the right of a subcontractor or materialman to sue the principal in a state court; that the usual law of suretyship applies; that under the usual law of suretyship, if the surety has notice of the suit, the judgment of

---

cert. denied, 1940, 311 U.S. 700, 61 S.Ct. 139, 85 L.Ed. 454; and Arnold v. United States for Use of W. B. Guimarin & Co., 4 Cir. 1922, 280 F. 338, writ of error dismissed, 1923, 263 U.S. 427, 44 S.Ct. 144, 68 L.Ed. 371, cited by the surety as es-

tablishing standards for fixing the date of final settlement, are wide of the mark. All were decided under the Heard Act which had no provision for the Comptroller General's issuance of a binding certificate.

the state court binds the surety by collateral estoppel. The usual law of suretyship on which the appellee relies is concisely stated in Lake County for Use and Benefit of Baxley v. Massachusetts Bonding & Ins. Co., 5 Cir. 1935, 75 F.2d 6, 8:

> "Where it appears that the judgment against the defendant was obtained in a suit of which the surety had full knowledge, and which it had full opportunity to defend, the judgment therein is not only evidence, but conclusive evidence, against every defense except that of fraud and collusion in obtaining it. * * * Where it is not made to appear that the surety knew of and had opportunity to defend the suit, then the judgment is prima facie evidence that the surety is liable, sufficient to support a verdict unless it is rebutted by proof on the part of the surety that it was obtained through fraud or collusion, or that the loss or liability created by the judgment arose from acts other than those indemnified against under the conditions of the bond."

See also Seaboard Surety Co. v. Westwood Lake, Inc., 5 Cir. 1960, 277 F.2d 397, cert. denied, 364 U.S. 821, 81 S.Ct. 55, 5 L.Ed.2d 50.

This principle is inapposite when the plaintiff's recovery depends upon a Miller Act bond.

A. As stated in *Lake County,* the doctrine of estoppel against the surety rests on the principle that a surety with knowledge of a suit against the principal has a "full opportunity to defend" the suit and to protect its rights. But there is no such equitable principle at work here. The surety cannot protect its rights by joining in the defense of the suit. It cannot intervene as defendant any more than it could be named as defendant in the first place. The state court would have no jurisdiction to consider the case. Thus, in Pierce Contractors, Inc. v. Peerless Casualty Co., Fla.1955, 81 So.2d 747, the contention was made, as it is made in this case, that the suit was not an action on the bond under the Miller Act but, "a complaint for breach of a contract". The Florida Supreme Court brushed aside this contention with the observation—which is implicit here— that "the bond given under the Miller Act is relied on for recovery in the suit brought in Dade County". See also Gardner v. Roberts-Nash Construction Corp., N.Y.Sup.Ct. 1951, 104 N.Y.S.2d 657.

B. The state court in Pierce Contractors, Inc. v. Peerless Casualty Co. relied on the language of the Act vesting exclusive jurisdiction of Miller Act suits in "the United States District Court for the district where the contract is to be performed and [executed] and not elsewhere".[3] See Koppers Co. v. Continental Casualty Co., 8 Cir. 1964, 337 F.2d 499, 506; United States for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Co., 2 Cir. 1962, 297 F.2d 665, 669, n. 9, 100 A.L.R.2d 451. This unequivocal congressional mandate would be rendered meaningless—if it could be defeated by the simple expedient of a supplier's suing in the state court and serving notice on the impotent surety. As this case demonstrates, once the issues of liability and damages are determined,

---

3. There has been much debate whether § 270b(b) is a jurisdiction or a venue statute. See, e. g., Autrey v. Williams and Dunlap, 5 Cir. 1965, 343 F.2d 730; Electronic & Missile Facilities, Inc. v. United States for Use of Moseley, 5 Cir. 1962, 306 F.2d 554, rev'd on other grounds, 1963, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818; Lasley v. United States for Use of Westerman, 5 Cir. 1960, 285 F.2d 98; Comment, 76 Harv.L. Rev. 635 (1963). We agree with the author of the comment that the section has both jurisdictional and venue attributes. It is jurisdictional in that clearly it authorizes suit to be brought in the district court. Autrey v. Williams and Dunlap, supra. On the other hand, it is not jurisdictional in the sense that actions are limited to the federal court to insure uniform or sympathetic interpretation of the Act. It is like a venue statute in that it severely limits the number of forums in which the defendant may be required to answer.

18

there is little left to be litigated. The only function remaining for the federal district court would be to rubber-stamp the state judgment and enter it against the surety.

If a Miller Act surety is bound by a state court judgment recognizing a supplier's claim against the principal—it is mere word-juggling to say that the suit in state court is not a suit under the Miller Act. The assumption that the Act permits such suits attributes to Congress an obtuseness sufficient to destroy the statutory scheme. The subject of the legislation is the protection of subcontractors, materialmen, and laborers on contracts for public works of the United States. Congress might have allowed these claimants to sue in state courts. There is a danger that the amount of the claims (judgments) might exceed the amount of the bond if there should be multiple litigation in state courts. But there are good reasons in support of such a decision: Absent diversity, state courts usually settle disputes between the parties to a construction; besides, the bond is a substitute for the protection a state lien affords. Instead, however, as clearly as good logomachists can, Congress vested exclusive jurisdiction over Miller Act suits in federal courts.

Since only federal courts may determine a surety's liability on a Miller Act bond, a state court judgment that would bind a surety on his Miller Act bond offends the congressional mandate. In these circumstances 28 U.S.C. § 1738 has no application.

■ The statute itself reflects the national interest in the supplier's remedy and the surety's liability. The plaintiff is denied his usual option to sue in the state courts. Suit must be brought in the name of the United States. And under the Heard Act, the statutory predecessor of the Miller Act, the Supreme Court was able to permit suit without regard to the amount in controversy by regarding such a suit as one in which the United States was a party plaintiff, "not here a merely nominal or formal party". United States Fidelity & Guaranty Co. v. United States, 1907, 204 U.S. 349, 356, 27 S.Ct. 381, 383, 51 L.Ed. 516. Prime contracts to which the United States is a party are governed by "federal common law". United States v. Allegheny County, Pa., 1944, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209. This Court held in Transamerica Insurance Company v. Red Top Metal Company, 1967, 384 F.2d 752 and holds here that federal law controls the supplier's right of action although courts may fill the statutory void as to attorney's fees by incorporating state law. All of the interested parties are assembled in one forum—a federal forum. In short, the surety is entitled to stand on the congressional decision that a United States district court independently determine the facts and the extent of a surety's liability under a Miller Act bond.

C. We turn now from statutory language to statutory history. The history evidences that Congress focused on venue as well as on jurisdiction.

"The history of the Miller Act is a history of the previous acts and amendments." Stickells, Bonds of Contractors on Federal Public Works—the Miller Act, 36 Boston U.L.Rev. 499, 501 (1956). The first federal legislation requiring bonding on federal construction projects was the Heard Act, adopted in 1894. 28 Stat. 278. It required only a single bond which was to protect both the Government and the suppliers of labor and materials. The Act did not provide exclusive federal jurisdiction but stated simply that suppliers of labor and materials

shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties and to prosecute the same to final judgment and execution * * *. 28 Stat. 278 (1894).

A subcontractor could sue on the bond prior to completion of the work; the judgment would be satisfied out of the bond and the coverage of the bond reduced by the amount of the judgment. The United States had no priority. The

effect was to reduce the bond to a point where it was of little or no protection to the government, and in any event, the government could only share pro rata with the suppliers. See United States for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Co., 2 Cir. 1962, 297 F.2d 665, 667, 100 A.L.R. 2d 451; Cushman, Surety Bonds on Federal Construction Contracts: Current Decisions Reviewed, 25 Fordham L.Rev. 241, 242 (1956); Stickells, supra, 36 Boston U.L.Rev. at 501–02.

In order to overcome these difficulties, Congress amended the Act in 1905 to establish a scheme whereby only one suit, in which the United States enjoyed priority over other claimants, was permitted. 33 Stat. 811, 812. All creditors protected by the Act had the right to intervene, and share pro rata what was left after the government's recovery. If they did not intervene, they lost their rights. "Obviously, the single forum was a necessity to this scheme." United States for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Co., supra, 297 F.2d at 668.

This system, too, proved unsatisfactory. Because of the government priority there were great delays in reimbursing unpaid suppliers. The one-suit provision produced strange and unjust results.[4] Frequently the government's prior claim would exhaust the entire bond. Stickells, 36 B.U.L.Rev. at 503.

"The Miller Act worked two basic changes in this arrangement: the contractor was required to post two bonds, one protecting the government against failure to perform, the other protecting the subcontractor. The government, being safeguarded by the performance bond, had no direct interest on the payment bond. Each supplier of labor or material was permitted to institute a separate action to recover his claim; the pro rata provisions were dropped, creating a race among subcontractors until the bond was exhausted". Aetna Casualty & Surety Co., supra, 297 F.2d at 668.

Although these changes eliminated the necessity that Miller Act suits be limited to a single forum, Congress retained that requirement. As Judge Clark noted for the Aetna court, the reason is not entirely clear. The most plausible explanation, it seems to us, is that the limitation was intended to meet the objections of the surety companies, which had expressed the fear that if the single suit provision were eliminated, they would be exposed to a multiplicity of suits, and could possibly be found liable for an amount in excess of the penal sum of the bond. See Hearings before the Subcommittee on the Judiciary, 74th Cong., 1st Sess., Serial 4, Mar. 8, 22, Apr. 26, May 3, 1935, pp. 49, 96. Although the Act as finally adopted did not grant the sureties the protection of having to defend only one suit, it did require litigation to take place in one or at most a small number of districts.[5] Not only would such a limitation in itself tend to maximize the convenience of the defendant, but by bringing a number of actions together in the same court it would facilitate the consolidation of many actions.[6] This solution provided

4. Stickells tells of one case in which there had been a defect in the first suit filed. Before the defect had been discovered, another claimant filed a second action, which was technically correct. Both actions were dismissed, the first because of its technical deficiency, the second, because the claimant should have intervened in the first suit. The result was that no one recovered. 35 B.U.L.Rev. at 503.

5. There was one slight change expanding the permissible number of districts from *the* district in which the contract was

to be performed to *any* district of performance. See United States for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Co., supra, 297 F.2d at 668.

6. The Second Circuit's language in United States for Use and Benefit of Bryant Electric Co. v. Aetna Surety & Casualty Co., supra, 297 F.2d at 668, text accompanying note 7, might imply that the cited House Report showed a congressional intention that suits not be consolidated. Although the report does indicate that

the surety with some protection while implementing the congressional desire to eliminate the inequities of the one-suit limitation.

The latest chapter in the legislative history of the Miller Act is now being written. The American Law Institute, in its Study of the Division of Jurisdiction Between State and Federal Courts, undertaken at the suggestion of Chief Justice Warren, was confronted with the same problem as Congress—whether to allow suppliers to sue in state courts. The Institute discussed the question in terms of the suppliers' claims and concluded to let well enough alone. This is the concluding paragraph of the discussion:

"The conclusion that no jurisdiction amount should be required in Miller Act cases does not necessarily mean that jurisdiction of the federal courts in such cases should be exclusive, as at present. Since the national interest involved is that of protecting subcontractors, materialmen, and laborers in obtaining their just due, there arguably would be no harm in permitting such persons to sue in state court if they feel secure there. To the extent that federal law controls some or all of the issues in such cases, it would do so even though a state forum were chosen. Free v. Bland, 369 U.S. 663 [82 S.Ct. 1089, 8 L.Ed.2d 180] (1962). But if the claims should exceed the amount of the bond, there is. an advantage in requiring, as at present, that all suits be brought in a single federal court. To use the language of a case which involved the similar provisions of the Capehart Act, Continental Cas. Co. v. Allsop Lumber Co., 336 F.2d 445, 452 (8th Cir. 1964), 'having in mind the legislative history; the policy and the purpose behind the Miller and the Capehart Acts; the variances in state law; the

common characteristics of these construction projects; the fact that participants who join in them often come from various parts of the country; the realization that there is a need for a practicable and yet a fair and reasonable means of assembling in one forum all the interested parties who were ready enough initially to devote their constructional abilities to a project in the local area; * * * and the awareness that delay and expense otherwise to be incurred by multiple litigation in geographically separated forums will thereby be avoided * *,' it is proposed in § 1311(b) to continue exclusive jurisdiction of Miller Act cases without regard to amount in controversy." ALI Jurisdiction Study, Tentative Draft No. 3, April 5, 1965, p. 102.

■ We therefore hold that a state judgment in a suit between a subcontractor and a prime contractor does not bind the surety in the subcontractor's Miller Act suit against it.

### III.

■ In Transamerica Insurance Company v. Red Top Metal Company, 384 F.2d 752, decided October 18, 1967, this Court held that in a suit under the Miller Act federal law controls. Attorney's fees, if recoverable, are recoverable as an element of the supplier's federally created right of action. In the absence of a specific provision in the Act relating to attorney's fees, the Court looks to state law for content with which to fill the substantive statutory gap. "State law 'governs' only through incorporation into federal law, not through its own force".

Turning now to Florida law, we find that Florida Statutes § 627.0127 and § 627.0905, F.S.A. allow "owners, subcontractors, laborers and material men" to recover attorney fees against the surety in the event of litigation.[7] Section 627.-

---

the committee was aware that there might be several suits on each bond, there is no hint that Congress intended to discourage consolidation.

7. § 627.0127 Attorney fee.—
  Upon the rendition of a judgment or decree by any of the courts of this state against an insurer in favor of an in-

0127 provides for the allowance of reasonable attorney fees against an insurer in favor of an insured or beneficiary under a policy of insurance upon the rendition of a judgment or decree by any of the Courts of the State of Florida. Section 627.0905, provides that surety bonds for construction contracts contain both performance and payment provisions, or that there be separate bonds containing such provisions, and that Section 627.0127, allowing attorney fees, apply to such bonds, the purpose being to protect and indemnify owners, subcontractors, laborers and materialmen against loss. Such persons are defined as insureds or beneficiaries within the meaning of Section 627.0127, Florida Statutes, F.S.A.

■ Erie has no application here. For purposes of borrowing state law and policy to fill an interstice in the Miller Act, it is irrelevant that § 627.0905 in terms applies only to payment bonds "written * * * under the laws of Florida".

■ Similarly, there is no merit to the contention that the applicable Florida statutes were enacted after the execution of the bond and that therefore their language cannot be read into the language of the board. (They were enacted in 1959 three years before the litigation began.) We agree with the district judge that the statutes should be given a retroactive effect. See United States Fire Insurance Co. v. Dickerson, 1921, 82 Fla. 442, 90 So. 613.

Finally, the appellant argues that the amount of the attorney's fees is excessive. We express no opinion on that point. We suggest, however, that the district court conduct a hearing in order to determine the reasonableness of the fees.

## IV.

■ Fidelity and Guaranty raises three additional points which merit only the briefest discussion. First the surety points out that but for its agreement to the extension of the contract, Hendry's claim would have been lost. At the time

sured or the named beneficiary under a policy of contract executed by the insurer, the trial judge shall adjudge or decree against the insurer and in favor of the insured or beneficiary, a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had. Except, that without any prejudice or effect whatsoever as to suits relating to other kinds of insurance, no such attorney fee shall be allowed in any such suit based on a claim arising under a life insurance policy or annuity contract if such suit was commenced prior to expiration of sixty days after proof of the claim was duly filed with the insurer. Where so awarded compensation or fees of the attorney shall be included in the judgment or decree rendered in the case.

§ 627.0905 Bonds for construction contracts; attorney fees in case of suit.—

(1) Whenever a surety insurer becomes a surety on a contract bond or bonds for either private or public construction in this state, such bond or bonds shall be either:

(a) A combination bond containing both performance and payment provisions and in an amount of not less than the total or estimated contract price, or

(b) Separate bonds for performance and for payment, but in such instances both bonds shall be issued and each shall be in an amount of not less than fifty per cent of the total or estimated contract price.

(2) Section 627.0127 (attorney fee) shall also apply as to suits brought by owners, subcontractors, laborers and material men against a surety insurer under payment or performance bonds written by the insurer under the laws of Florida to indemnify such owners, subcontractors, laborers and material men against pecuniary loss by breach of a building or construction contract, except, that the amount to be so recovered for fees or compensation of such a plaintiff's attorney shall not be more than twelve and one-half per cent of the amount which the judgment or decree awards such plaintiff under the bond (exclusive of the costs of suit and attorney fees or compensation), nor shall it be less than one hundred dollars where the judgment or decree is for more than five hundred dollars nor less than fifty dollars where the judgment or decree is five hundred dollars or less. Such owners, subcontractors, laborers and material men shall be deemed to be "insureds" or "beneficiaries" for the purposes of this section.

of the extension, the surety agreed to increase the penal sum of the bond by some $65,000. Since it is liable only because of the extension agreement, the surety argues, its liability should be limited to the amount of the increase in the penal sum. The argument is totally without merit. As long as Hendry may properly sue, he is entitled to the benefit of the full penal sum of the bond, less, of course, any claims already paid.

The surety's next point is that Hendry and Smith were joint venturers. The basis for the assertion is that the agreement between Smith and Hendry called for Hendry to receive bare plant rental plus a one-half share of whatever profit was realized from Smith's government contract. Finally, Fidelity & Guaranty asserts that it is not liable for the "profit" portion of the contract price agreed on by Smith and Hendry. Both these questions may more properly be resolved upon the trial on the merits than in the factless setting of an appeal from a summary judgment. Since the resolution of another issue requires us to remand for a trial, we decline to decide these last two points.

The judgment of the district court is reversed, and the case is remanded to that court for a trial on the merits.

GODBOLD, Circuit Judge (dissenting):

I dissent from the holding of the majority that a state court determination of liability of the principal is to be given no collateral estoppel effect in a Miller Act suit against the surety in federal court.

Federal jurisdiction over Miller Act claims is exclusive. There is no equivocation in the words of the statute as to where venue properly lies. But statutory pronouncements of jurisdiction and venue do not answer the question presented here.

The usual rule of suretyship law is as stated by the majority, that if the surety has full knowledge and opportunity to defend a suit against the principal, a judgment against the principal is conclusive against the surety (absent fraud and collusion). See Lake County for Use and Benefit of Baxley v. Massachusetts Bonding & Ins. Co., 75 F.2d 6 (5th Cir. 1935); Seaboard Surety Co. v. Westwood Lake, Inc., 277 F.2d 397 (5th Cir. 1960). Fidelity & Guaranty had knowledge of the suit against its principal and an opportunity to defend it. Both the state court proceeding against the principal and the federal suit on the bond took place in Pensacola, Florida. The same attorneys represented the principal in state court and the surety in federal court. Though the state suit was filed long before the federal suit it lay dormant, and in the active stages of litigation the two cases proceeded more or less concurrently.

Were it not for the Miller Act there would be no doubt of the applicability of the normal principal-surety rule to the circumstances of this case. We are called upon to decide whether the language and legislative history of the Miller Act preclude application of this rule to Miller Act cases.

I dissent from the conclusion of the majority. It is inconsistent with all previous Miller Act case law I am able to find on the subject. It is in violation of the terms and policy of the federal full faith and credit statute, 28 U.S.C.A. § 1738.

The usual rule referred to above has long been applied in Miller Act and Heard Act cases without regard to whether the judgment against the principal was obtained in state or federal court. Massachusetts Bonding & Ins. Co. v. Robert E. Denike, Inc., 92 F.2d 657 (3d Cir. 1937) (state court judgment); United States, for Use and Benefit of Larkin v. Maryland Casualty Co., 45 F.Supp. 286 (D.Mass.1942) (state court judgment); Herzog v. DesLauriers Steel Mould Co., 46 F.Supp. 211 (E.D.Pa.1942) (federal court judgment). Compare United States, for Use of Vigilanti v. Pfeiffer-Neumeyer Const. Corp., 25 F.Supp. 403 (E.D.N.Y.1938).

Section 1738, 28 U.S.C.A., provides an independent ground requiring that effect be given to the state adjudication in the case before us. (That section was not mentioned in *Massachusetts Bonding* and *Larkin*.) The effect which must be accorded a state judgment by a sister state is governed by the full faith and credit clause of the Constitution.[1] In 1790 the Congress acted to extend the force of the full faith and credit clause to federal courts. Act of May 26, 1790, 1 Stat. 122.[2] This act, as amended, but with the operative language substantially unchanged, now appears at § 1738.

As a general proposition § 1738 requires federal courts to give state adjudications the same effect they would have in the rendering jurisdiction. Union & Planters' Bank v. City of Memphis, 189 U.S. 71, 23 S.Ct. 604, 47 L.Ed. 712 (1903); Wayside Transp. Co. v. Marcell's Motor Express, Inc., 284 F.2d 868 (1st Cir. 1960); see Midessa Television Co. v. Motion Pictures for Television, Inc., 290 F.2d 203 (5th Cir. 1961), cert. denied, 368 U.S. 827, 82 S.Ct. 47, 7 L.Ed.2d 30 (1961); Rich v. Naviera Vacuba, S.A., 197 F.Supp. 710 (E.D.Va.), aff'd 295 F.2d 24 (4th Cir. 1961) (dictum). As with the full faith and credit clause itself it is always permissible for the court in which a prior judgment is asserted to inquire into the jurisdiction of the rendering court. Otherwise the rule appears to permit no exceptions, and in the absence of the Miller Act would require the federal court to give collateral estoppel effect to a state court determination

of identical issues in litigation on another cause of action. See United States v. Silliman, 167 F.2d 607 (3d Cir.), cert. denied, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948).

The question thus becomes whether by enacting the Miller Act in 1935 the Congress created an exception to the operation of § 1738. I find nothing to indicate that it did.

It is readily apparent that there is no pertinent express repealer incorporated into the provisions of the Miller Act.[3] If § 1738 was affected by passage of the Miller Act it was by implication.

Repeals by implication are not favored, and where possible statutes with potentially inconsistent provisions will be construed so as to give effect to both. See United States v. Zacks, 375 U.S. 59, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963). Unless there is "some manifest inconsistency or positive repugnance between the two statutes" we are required to construe them harmoniously. Mercantile Nat. Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); United States v. Borden Co., 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181 (1939). At the most repeal by implication has limited vitality, and it falls to its lowest ebb, if having any scope at all, when asserted in derogation of a statute which incorporates into federal-state jurisprudence a principle of state-to-state jurisprudence that is of constitutional dimension.

Through the full faith and credit clause "local doctrines of res judicata * * *

1. U.S.Const. art. 4, § 1: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved and the Effect thereof."

2. "The acts of the legislature of any State or Territory, or of any country subject to the jurisdiction of the United States, shall be authenticated by having the seals of such State, Territory, or country affixed thereto. The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States,

by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the States from which they are taken."

3. The Miller Act contained a provision which repealed its predecessor, the Heard Act. Act of Aug. 24, 1935, c. 642, § 5, 49 Stat. 794. But the repealer purported to have no further effect.

become a part of the national jurisprudence." Riley v. New York Trust Co., 315 U.S. 343, 349, 62 S.Ct. 608, 86 L.Ed. 885, 891 (1942). Section 1738 was enacted to extend the full faith and credit concept to the federal courts. The implied repeal or limitation of a statute with such fundamental constitutional underpinnings would require a "manifest inconsistency" of the highest order, if indeed such a statute can be rescinded or modified in any way other than by direct congressional pronouncement. Nor should the courts, in a particular type of case, lightly carve out of "the national jurisprudence" established doctrines of res judicata and create a new and special federal law of res judicata in their stead for that particularized situation only.

It has long been recognized that the dominant motive underlying passage of the Miller Act was protection of subcontractors and materialmen by requiring the contractor to post a separate bond to insure their prompt payment.[4] Such a construction is fully supported by the legislative history. See generally S.Rep. No. 1238, 74th Cong., 1st Sess. (1935); H.R.Rep. No. 1263, 74th Cong., 1st Sess. (1935); Hearings on Bonds of Contractors on Public Works Before a Subcomm. of the House Comm. on the Judiciary, 74th Cong., 1st Sess., ser. 4 (1935). There is no basic inconsistency between this protection and the terms of § 1738. In the absence of a "manifest inconsistency or positive repugnance" between the statutes, we must assume that Congress enacted the Miller Act in light of § 1738, and, construing them so as to give effect to both, must conclude that in a suit against a Miller Act surety a

federal court is required to give to a prior state adjudication in a suit by a subcontractor against the principal the same effect as by law or usage the courts of such state would give. One need not speculate on what effect a Florida state court, in a suit against the surety, would give to a prior Florida state judgment against the principal. *Seaboard Surety,* supra, was a Florida case and cites the Florida state law. *Lake County,* supra, was a Florida case also, though citing general authorities.

Finally, I do not read the congressional history and intent as do the majority, who dilute the long-recognized statutory purpose of the Miller Act—protection of suppliers and subcontractors—by deducing an unexpressed congressional intent in enactment of the same Act to protect surety companies from inconvenience. This 180-degree change in direction is based upon congressional retention of the exclusive jurisdiction provision when the separate payment bond was provided for and separate actions thereon permitted by the various suppliers. A representative of the surety industry, before the House committee, expressed the fear that if subcontractors were permitted to maintain separate suits in their own state courts a likely result would be that the surety would be required to pay more than the face amount of the penalty bond.[5] As I read this statement it is clear that the witness was referring to a provision included in one of several bills pending before the committee, H.R. 4461, 74th Cong., 1st Sess. (1935), which would have permitted actions *on the bond* to be "commenced in any court of competent jurisdiction in the State wherein the contract is to be performed." The sure-

4. See, e. g., United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957); Clifford F. MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); St. Paul Fire & Marine Ins. Co. v. United States for Use of Dakota Elec. Supply Co., 309 F.2d 22 (8th Cir. 1962), cert. denied, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963); United States for Use and Benefit of J. A. Edwards & Co. v. Thompson Const. Corp., 172 F. Supp. 161 (S.D.N.Y.), aff'd, 273 F.2d

873, 78 A.L.R.2d 421 (2d Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960).

5. "If you have a dual bond, unless you have the form very carefully prescribed in which suit must be brought you may render it impossible for the surety companies to write bonds. If, for example, under one of these present pending bills you can sue in any court—now, you gentlemen know full well what would happen if in the District of Columbia—I will keep away from it—if in Maryland a

ties wanted retention of the single suit provision. Congress rejected this in favor of allowing multiple claimants' suits *on the bond,* but continued the principle of exclusive federal jurisdiction for suits *on the bond* against the surety, which laid to rest the apprehension of the surety companies of possible liability in excess of the bond penalty. Subject to a nominal exception [6] a single federal court now has, as it had in the past, responsibility for ascertaining ultimate liability of the surety, and that court can, and no doubt will, see to it that judgments are not entered by it against the surety exceeding the penal sum of the bond. As Judge Clark spelled out in United States for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Co., 297 F.2d 665 (2d Cir. 1962), the Act created "a race among subcontractors *until the bond was exhausted.*"

I find nothing in the legislative history evidencing that Congress reached any conclusion on the manner in which, in a suit against the surety in the court having jurisdiction thereof, liability and damages are to be determined, or whether the normal rules of collateral estoppel applied to principal and surety were to be changed (or that Congress even dealt with these subject matters). *Aetna,* after discussing the various surety company requests that Congress would not accede to, says: "Thus the section retained scant utility, save as a convenience to the defendants." 297 F.2d at 668. Nothing in *Aetna* suggests that the phrase "convenience to the defendants" is in any way related to or concerned with the privilege of being exempted from the normal rules of collateral estoppel.

Quite clearly there was no congressional mandate against multiplicity of suits—in fact, rather than retaining for each payment bond the Heard Act's single suit requirement, as it might have done, Congress allowed each claimant to file a separate action. Congress refused to heed the request of surety company officials for retention of the single suit for all creditors, and declined to adopt a proposed bill that included the single suit requirement. H.R. 5054, 74th Cong., 1st Sess. (1935). Also the shift from one to several possible districts (see n. 5, supra) *reduced* the possibility that suits could be consolidated. See *Aetna,* supra at 668.

I see no basis for deviating from the normal rules of collateral estoppel, from the previous federal cases applying those rules in Heard Act and Miller Act cases, from the federal full faith and credit statute, and from the basic purpose, until now recognized, of the Miller Act. "The primary aim of the Miller Act was to *secure greater protection* for the subcontractor * * * and to *facilitate suit* by those supplying labor or materials to the general contractor." *Aetna,* supra at 668–669. I would affirm.

## ON PETITION FOR REHEARING EN BANC

**PER CURIAM:**

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25(a), subpar. (b), the Petition for Rehearing En Banc is denied.

job is being performed and we had a performance bond under which a man from California and a man from Texas and a man from Michigan, and a man from Maine were all furnishing materials they would all sue in their own States. If that were the case, we might have to pay the penalty of the bond three or four times. I frankly tried to find authority for it, and I cannot find any very substantial authority for the proposition that we could plead in California the rendition of a judgment against us in Maine, reducing the penalty on the bond." Hearings on Bonds of Contractors on Public Works, supra at 48.

6. The Heard Act limited suit to one district —*the* district in which the contract was to be performed. The Miller Act amended this provision to permit suit in *any* district in which performance would occur. See United States for Use and Benefit of Bryant Electric Co. v. Aetna Casualty & Surety Co., 297 F.2d 665, 668, (2d Cir. 1962); n. 5 of majority opinion.